# Wiggs *v.* Winn.

### *Bill in Equity to enforce Trust in Land.*

1. *Express trust in land; how created.*—To create an express trust in land, within the provisions of the statute which requires that it must be by an instrument in writing, signed by the party creating or declaring the same, (Code, § 1041), no particular form or precise words are necessary. Any instrument in writing, signed by the party before or at the time of the trust, or subsequently, manifesting the nature, subject matter and objects of the trust, with reasonable certainty, will suffice; nor is it necessary that the trust and its terms should be included in one writing.

2. *Same; same; case at bar.*—The agent and confidential friend of a mortgagor wrote to him, requesting him to convey the mortgaged premises to said agent, in order that, acting for the mortgagor and holding the legal title for him, he might mortgage the property to raise money to redeem it from the mortgagee for the mortgagor, and inclosed in his letter a deed to be executed by said mortgagor. This letter, which

was signed by said agent, fully stated the trusts upon which the land was to be had. In response thereto, the mortgagor executed and delivered to said agent a regular warranty deed, and he thereafter negotiated a loan on said property, which he used to redeem it from the original mortgagee. After the execution of this deed of conveyance, the said agent repeatedly, in his correspondence with the grantor, recognized and declared the trust upon which he held the land. *Held*: That the letters signed by the grantee, which induced the execution of the conveyance to him by the grantor, constituted a complete declaration of trust in contemplation or anticipation of the conveyance immediately thereafter made by the mortgagor to him, and that, therefore, the grantee in said conveyance held the property so conveyed in express trust for the grantor; and likewise there was a perfect declaration of the trust upon which the grantee held the property, made by the letters which he wrote, signed and sent to the grantor, after the execution of the conveyance.

3. *Same; same; same.*—In such a case, it is of no consequence that the land in controversy had been sold under the original mortgage and had been bought in by the holder of the mortgage before the execution of the deed from the mortgagor to the grantee therein, so that at the time said deed was executed, the grantor therein had only a non-assignable, statutory right to redeem, where it is shown that the purchaser at the mortgage sale recognized the deed of conveyance as an efficacious assignment of the mortgagor's right of redemption and allowed the grantee in said deed to redeem.

APPEAL from the Chancery Court of Jefferson.

Tried before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellant, J. A. Wiggs, Jr., against C. W. Winn on December 3, 1898. The bill as amended alleged that on the 7th day of January, 1897, and several years prior thereto, complainant resided in Birmingham, Ala.; that during this time and until a few days prior to the filing of the bill the defendant, C. W. Winn, was his confidential friend and agent in whom he placed the most implicit confidence in the management of his business, which was very largely confided to him; that on the 7th day of January, 1897, complainant became indebted to one Ernst in the sum of $1,750, for which he executed his note, indorsed by W.

G. Robinson, secured by mortgage on the lot in contro-
versy, with a power of sale, payable at ninety days.
The bill then further averred the following facts:
Complainant not being able to pay said note at ma-
turity, the property was sold under the power contained
in said mortgage on the 26th day of July, 1897, and was
purchased by Leo K. Steiner for the sum of $1,400,
leaving a considerable balance unpaid, of which said
Steiner had become and was then the owner. After
said sale Leo K. Steiner took possession of said prop-
erty. Some time prior to the sale complainant moved
to the Territory of New Mexico, where he has ever
since resided, leaving the defendant, his agent, in the
management of his business. After his departure he in-
structed the defendant to raise the money to pay off the
mortgage debt and for that purpose to mortgage, sell
or otherwise encumber the property. Prior to the sale
under the Ernst mortgage, defendant Winn, acting as
complainant's agent and on his behalf, made repeated
efforts to raise money to pay off said debt. To facilitate
this purpose, complainant executed to Winn a deed
for the property, reciting a consideration of $2,000,
with the understanding and agreement that Winn was
to use said lot for the purpose "only" of raising money
to redeem it from the sale under the Ernst mortgage.
Pursuant to said understanding said Winn, on the
7th day of September, 1897, made an agreement with
Leo K. Steiner, who had bought the property at fore-
closure sale and became the owner of the balance due on
the mortgage debt, to redeem (for and on behalf of com-
plainant) the lot by paying $150 cash and $144.73 in
thirty days, $145.73 in sixty days and $146.73 in ninety
days, and $1,500 at any time within two years from the
date of the mortgage. The small deferred payments
were evidenced by the notes of the Robinson-Wiggs
Foundry & Machine Company, a corporation mainly
owned and controlled by complainant, and were en-
dorsed by W. G. Robinson. Complainant Wiggs made
the cash payment of $150 and also paid the small notes
until the amount necessary to redeem said property
was on, to-wit, May 4, 1899, $1,750. Of this complain-

ant paid $500, and said Winn borrowed from one Massey for complainant $1,350 pursuant to said agreement by giving mortgage on said property, which said last sum was used in paying the balance necessary to redeem said property, and certain taxes and other charges against the same. For the money so borrowed Winn executed to said Massey his notes and mortgage on said property to secure the same, all of which was done on behalf of complainant. Thereupon the said Leo K. Steiner executed to said Winn a deed conveying said property to him in his own name. Said deed was made for and on his behalf, and said Winn holds said property in trust for complainant. At the time said property was thus redeemed Winn was in possession of it under a lease from Leo K. Steiner and remained in possession until about the 1st day of October, 1898, when he leased the same to James J. Banks, Esq., for one year from that date at $21 per month, payable monthly. This lease was made for complainant's benefit, but taken in the name of Winn.

It was further averred in the bill, as amended, that on the redemption of said lot from said Steiner it became and was the duty of the defendant Winn to re-convey the same to him, but he fraudulently refused to do so; that the lot was worth largely more than the amount for which it was mortgaged; and that Winn, taking advantage of the fact that he held the legal title, was fraudulently endeavoring to sell said property in violation of his trust, without the knowledge or consent of complainant, and convert the proceeds of the sale to his own use, and that Winn is wholly insolvent.

The prayer of the bill is that on final hearing the defendant Winn be required to re-convey to complainant the title to said property subject to the mortgage made by him on the same, and for such other, further and general relief as in equity he may be entitled to.

The defendant Winn, answering the bill, denies the material allegation thereof, except that the complainant conveyed the land described in the bill to him, and says that there was no written agreement whatsoever that he was to reconvey said land to the complainant; and

that there was no written declaration whatever made by him that said land is held in trust for complainant. The other facts of the case are sufficiently stated in the opinion.

Upon the final submission of the cause, upon the pleadings and proof, the chancellor decreed that the complainant was not entitled to the specific relief prayed for in the bill, but held that as it appeared that of the $2,200 of the purchase money paid for the property described in the bill, J. A. Wiggs, Jr., the complainant contributed $550 which was used in the purchase of said property, that a trust resulted in favor of the complainant in said property to the extent of the money so used; and decreed accordingly. From this decree the complainant appeals, and assigns the rendition thereof as error.

WHITE & HOWZE, for appellant, cited *Duval v. Mc-Clockey*, 1 Ala. 509; *Allen v. Kellan*, 69 Ala. 443; *Farris v. Houston*, 74 Ala. 162; *Grady v. Robinson*, 28 Ala. 289; *Lewis v. Teal*, 82 Ala. 288; *Paulding v. Lee*, 20 Ala. 754; *Robinson v. Brooks*, 32 Ala. 222; *Andrews v. Jones*, 10 Ala. 460; 1 Pomeroy's Eq., § 434; 2 Pomeroy's Eq., §§ 858, 859, 921; 3 Pomeroy's Eq., § 1293.

BANKS & SELHEIMER, *contra*, cited *Kennedy v. Kennedy*, 2 Ala. 571; *Patton v. Beecher*, 62 Ala. 599; *Lehman v. Lewis*, 62 Ala. 129; *Jackson v. Long*, 117 Ala. 429.

McCLELLAN, C. J.—It is perfectly clear on the evidence in this case that Winn took a conveyance from Wiggs of a house and lot in trust for the grantor for the purpose of raising money on the property to redeem it from the purchaser under a pre-existing mortgage for the benefit of Wiggs, the grantor, and that everything that Winn has done in respect of the land, leaving out of view his final attempted repudiation of the trust, has been in line of and in the execution of this trust. The answer of respondent Winn is really not a denial of these facts, though he makes a lame and halt-

ing attempt in that direction; and the evidence establishes their truth without controversy. The defense which he really relies upon is thus set forth in his answer: * * * "he admits that complainant conveyed to him the land described in said bill, but he says there was no written agreement whatsoever that he should reconvey said land to the complainant, and further says that there is no written declaration whatsoever made by him that said land is held in trust for complainant." And so the important question in the case is whether the trust was created "by an instrument in writing signed by the party creating or declaring the same," that is by Winn, within the terms of section 1041 of the Code. We think there is no doubt that this trust was created or declared, or created and declared by writing entirely sufficient to satisfy the provisions of the section referred to. "No particular form or precise words are required. Any instrument in writing, signed by the party at the time of the creation of the trust, or subsequently, manifesting the nature, subject matter and objects of the trust with reasonable certainty may suffice." *Bibb v. Hunter*, 79 Ala. 351. And "it has been uniformly held that letters under the hand of the trustee, distinctly referring to the trust are sufficient as written manifestations or proofs to satisfy the statute; and a printed pamphlet, published and circulated by the trustee, has also been considered sufficient. So with entries made by the trustee in his books, or any memorandum however informal, under his hand, from which the fact of the trust and the nature of it can be ascertained."—Browne, Statute of Frauds, § 98, and see also §§ 97, 99-112. "There is no particular formality required or necessary in the creation of a trust. All that is required is written evidence supplying every essential detail of the trust. * * * Any agreement or contract in writing, made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property * * * shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making

such agreement, or any other person claiming under him
voluntarily or with notice; and the statute of frauds
will be satisfied if the trust can be manifested or proved
by any subsequent acknowledgement of the trustee, as
by an express declaration, or any memorandum to that
effect, or by a letter under his hand, or by his answer
in chancery, or by his affidavit, or by a recital in a bond
or deed, or by a pamphlet written by the trustees, or by
an entry in a bank deposit book; in short, by any writing
in which the fiduciary relation between the parties and
its terms can be clearly read."—1 Perry on Trusts, § 82.
And this is the law in Alabama with the qualification
that the creating or declaratory writing must be *signed*
by the party creating or declaring the trust.—Code. §
1041; *McCarthy v. McCarthy,* 74 Ala. 546, 552; *Gravlee
v. Lamkin,* 120 Ala. 210.  Nor is it necessary that the
trust and its terms should be found in *one* letter; it is
sufficient if they appear from any number of letters or
writings.—*McCandless v. Warner,* 26 W. Va. 754; *Lor-
ing v. Palmer,* 118 U. S. 321.  And it would seem that
an efficacious declaration of a trust may be made *before*
the conveyance to the trustee in contemplation or anti-
cipation of such conveyance.—*Jackson v. Moore,* 6
Cowen (N. Y.), 706, 725; 1 Perry on Trusts, § 83.  And
if the terms of the trust are collected from several
papers, it is not necessary that all of them should be
signed, provided they are so referred to and connected
with the paper that is signed that they may be identified
and read as genuine, and a part of the transaction.—1
Perry on Trusts, § 83.

We need not go into a detailed statement of the evi-
dence here.  It shows that one Robinson who was acting
with the respondent in this matter wrote to the com-
plainant suggesting to him and requesting him to con-
vey this house and lot to him, Robinson, or to Winn to
the end that they acting for complainant and holding the
legal title for him might mortgage the property to raise
money to redeem it from one Steiner for the complain-
ant.  Winn also at this time wrote to Wiggs referring
to and enclosing Robinson's letter suggesting and re-
questing a conveyance by Wiggs to himself or Winn on

the trust stated, and inclosed a deed to be executed by Wiggs and returned to him. These letters of Robinson and Winn fully state the trusts upon which the land was to be held by them, or that one of them to whom Wiggs should convey the property; and in response to them Wiggs executed and delivered to Winn the deed under which the latter now claims the house and lot free from all trusts. On the authorities cited above these letters of Robinson and Winn, Robinson's being made a part of Winn's by reference and being a part of one and the same transaction, and Winn's letter being signed by him, constituted a complete declaration of trust in contemplation or anticipation of the conveyance immediately thereafter made by Wiggs to Winn. Indeed, the letters and the conveyance, the latter being made in response to the former, are to be taken as parts of one act and to be read together in determining the terms upon which the conveyance was made. But we need by no means rest the case here. After the conveyance had been made, Winn over and over again recognized and declared the trust upon which he held the land, and the terms of it in numerous letters which he wrote, signed and sent to Wiggs; so that leaving entirely out of view the preliminary letters of Winn and Robinson, there was a perfect declaration of the trusts upon which Winn held the property made by writings signed by him; and our conclusion is that the express trust alleged in the bill has been fully proved by writings which satisfy the statute of frauds.

It is of no consequence under the facts of this case that the land in controversy had been sold under the mortgage executed to Ernst and which he had assigned to Steiner, and had been bought in by Steiner before the execution of the deed by Wiggs to Winn, so that at the time said deed was executed Wiggs was without title or property in the house and lot, and had only a non-assignable statutory right to redeem from Steiner. The latter recognized the conveyance to Winn as an efficacious assignment of Wigg's right of redemption, and allowed Winn to redeem. Winn himself recognized it as

a conveyance of the property to him and proceeded accordingly to mortgage it to Massey to raise money to redeem from Steiner, and Massey claims through that conveyance. So that it does not lie in the mouth of Winn, who alone is respondent to the bill; to say that he took nothing by the conveyance; nor would Steiner or Massey be allowed to set up Wiggs' want of title if they were parties to the cause and had interests to subserve in doing so. Winn, therefore, at law holds the equity of redemption and Massey the legal title. In the eyes of a court of equity Winn holds the legal title subject to Massey's mortgage lien in security of his debt. And in any view Winn's right or title in the premises is held in trust for Wiggs subject to Massey's mortgage.

The trust upon which Winn holds for Wiggs is well defined in the evidence—Winn's declaratory letters. It was for and in behalf of Wiggs to mortgage the property to raise money to redeem from Steiner. The chief, if not sole, occasion for the conveyance by Wiggs to Winn upon this trust was the residence of Wiggs in a distant part of the country, and the facts that Winn resided and was acting generally as Wiggs' agent at Birmingham where the property was situated and where Steiner, to whom the money to be raised was to be paid, also resided. Winn executed the trust. He mortgaged the property in his own name to Massey and thereby raised the greater part of the money to redeem from Steiner. The balance of it was paid to Steiner through Winn by Wiggs; and he redeemed from Steiner, taking title to himself. As between Wiggs and Winn, the former is entitled to a conveyance from the latter. And they are the only parties to this suit. Of course, the conveyance would be subject to Massey's mortgage, and he, not being a party here, can be in no wise affected by a decree requiring such conveyance.

It is our conclusion, therefore, that the chancellor erred in holding that Winn did not hold this property on an express trust for Wiggs. The decree below is reversed, and a decree will be here entered granting the relief specially prayed in the bill.

Reversed and rendered.