HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS, MARTIN P. GREY AND
EUGENE STEVENSON, VICE-CHANCELLORS.

MARY ELIZABETH ALLER

*v.*

CORNELIUS P. CROUTER et al.

[Filed March 7th, 1903.]

1. Reformation of a conveyance of lands will not be decreed except on clear proof that, by mutual mistake of the parties thereto, it expresses something which they did not intend, or omits to express something which they did intend.

Aller *v.* Crouter.

2. A trust in lands will not result in favor of the grantor in a conveyance thereof upon a valuable consideration therein expressed, upon parol proof that no part of the consideration was paid and that the conveyance was wholly voluntary, because such proof is in contravention of the statute of frauds and forbidden by the canon of evidence which prohibits the admission of oral testimony to vary the effect of a written instrument.

3. Lands were conveyed by A to B for an expressed valuable consideration. Thereafter B made and signed a lease thereof to a third person, in which it was expressed that he demised the same as "trustee for A," and B also opened an account in his book of accounts, headed in his own handwriting, "A account with B, trustee," in which account B charged himself with rents received from the tenant in said lease, and claimed credits for payments made for the benefit and use of A.—*Held*, that an express trust was thereby "manifested and proved" within the requirement of the statute of frauds.

On bill to reform a deed and for other purposes.

*Mr. Cornelius Doremus,* for the complainant.

*Mr. David Ackerman,* for some of the defendants.

MAGIE, CHANCELLOR.

The labor involved in the examination of this cause has been largely increased by the manner in which it has been presented. No attention seems to have been paid to the rules of pleading or practice in the courts of equity, and I have had extreme difficulty in attempting to discover whether the case presented admits of determination by decree.

The bill in this cause was filed by Mary Elizabeth Aller, admitted to be a person of unsound mind, by a next friend. It states that she and her husband, Daniel J. Aller, on October 20th, 1876, by deed, with full covenants of warranty and seizin, conveyed to one Peter Ackerman, for the expressed consideration of $7,500, certain lands in the county of Bergen. It avers that, immediately upon the execution and delivery of the deed, Peter Ackerman, the grantee, went into possession of said lands, and received the rents, and continued in possession until his death, on August 17th, 1901. It proceeds to state that the deed was made upon the express agreement, between the grantors and

grantee, that Ackerman should hold the same as trustee for Mary Elizabeth Aller, upon a trust thus expressed, viz.:

"Upon the express trust and agreement that said Peter Ackerman should rent said premises and pay the net income derived therefrom, after payment of all charges connected with the management of said property, to said Mary Elizabeth Aller, or use the same for her maintenance and support, and that if said Peter Ackerman should sell said premises, that the proceeds of such sale and all income derived therefrom, after payment of all expenses and charges touching the same, should be used for the support and maintenance of said Mary Elizabeth Aller, and that upon the death of the said Mary Elizabeth Aller any balance remaining in the hands of said Peter Ackerman should be paid to her lawful heirs."

It is further stated therein that Peter Ackerman, together with his wife, on November 29th, 1876, had conveyed a portion of the said lands to one Mason, at the request of the complainant, and had afterwards died, on August 17th, 1901, leaving a last will and testament, by the residuary clause of which he devised all the rest, residue and remainder of his estate to, or for, certain persons therein named, all of whom were made parties to the bill.

The bill expressly avers that it was the intention and agreement of the parties thereto, at the time of the execution and delivery of the deed, that the same should be considered and treated as a trust deed, and that, through "inadvertence, ignorance and mistake, said deed was drawn as a warranty, and not as a trust, deed."

The prayer of the bill is for an answer without oath; for an account of the rents and profits, and for a reformation of the deed by the insertion of the words "trustee for Mary Elizabeth Aller" after the words "Peter Ackerman" wherever they occur in the deed, and by the substitution of apt words in the *habendum* clause, and other clauses, to show that the deed is a trust deed, and intended to convey an estate in trust for the complainant. The prayer also contains the extraordinary request that the warranty clause in the deed should be eliminated, together with all other words purporting to convey an estate in fee-simple to said Ackerman.

To this bill the next friend of the unfortunate complainant made parties Cornelius P. Crouter and Peter G. Zabriskie, who are the executors of the will of Peter Ackerman; James Turner Ackerman, David D. Ackerman, Mabel Harper, Annie M. Ackerman and Edwin Ackerman, devisees under the residuary clause of said will; and John Pake, brother of the complainant; John H. Pake, his son, and Louisa Duryea, a niece of complainant, the three last named being made parties apparently on the theory that they are heirs presumptive or apparent. James T. Ackerman and Edwin Ackerman, and Crouter and Zabriskie, executors, each filed an answer expressing ignorance of the charges made in the bill, and leaving the complainant to make such proof of her allegations as she was advised to do. Louisa Duryea, John Pake and John H. Pake unite in an answer admitting the charges of the bill, and praying for such decree as may be proper. David D. Ackerman, Anna M. Ackerman and May Belle Harper unite in an answer by which they deny the trust set up in the bill, and deny that the complainant has any title to the lands in question, or that the deed was intended to be a deed in trust, or that it was made under any mistake with respect to the form of the deed and its meaning.

To this answer, which denied all the facts upon which the equity of the bill was based, no replication was filed within the time required by the practice.

On April 22d, 1902, an order was made, with the written consent of the solicitors of all the parties. It recited that the matters in controversy were proper subjects of a reference to a special master, and that the parties had agreed that the issues in the cause should be heard by James M. Van Valen, a special master. It directed him to take evidence in respect to the allegations of the bill and answers subject to objections, and to take and state an account of the transactions between the complainant and Peter Ackerman, and to report the same, with the evidence.

The special master to whom the reference was thus made has reported to this court the evidence taken before him. Upon his report being filed the cause was set down for hearing, under a

written stipulation of all the solicitors, and was submitted on briefs.

When attention was called to the fact that the cause was not at issue, a replication was filed, by the agreement of all the solicitors and the permission of the court.

After the evidence had been taken the death of Mary Elizabeth Aller, the complainant, was suggested to the court. The affidavit of her death stated that her sole next of kin were John H. Pake and Louisa Duryea, who were parties defendant in the cause. Thereupon an order was made for the amendment of the bill, by admitting them to appear as complainants instead of defendants. As the contest relates to real property, and as the evidence discloses that they are the sole heirs-at-law of the deceased, Mary Elizabeth Aller, this circumstance has not been deemed sufficient to prevent consideration of the cause. As the cause has been thus presented, it has been deemed best to consider it as a cause submitted on evidence taken before an examiner within the practice of the court, and it has been thus considered.

The apparent object of the bill is to reform a certain deed, and the main prayer thereof is for such reformation. But the evidence produced, on the part of the complainant, renders it perfectly clear that such relief cannot be granted, and should not have been asked. In respect to such relief, it has not been contended, nor is it open to doubt, that parol evidence may be admitted to establish a case for the reformation of such a deed.

The facts disclosed by the admissible evidence are, in the main, these: In 1876 the original complainant, Mary Elizabeth Aller, was the owner, in fee-simple, of a tract of land in Bergen county, containing about ten acres, which was improved by buildings. She was in possession of the property. She was a married woman, having been married to Daniel J. Aller some years before. The marriage had proved an unhappy one, and after a few months they had separated, and thereafter lived apart. Her marriage does not seem to have been generally known, for she resumed her maiden name of Pake, and was spoken of and to as "Miss Pake." In that year she contracted to sell a portion of the property, and the proposing purchaser discovered that she had been married, and declined to take the

deed without her husband joining in it. In that situation Mrs. Aller sought the advice of Peter Ackerman, a person long resident in the county, whom she had known for many years. He appears to have been a man of position and character. After a conference with him it was decided by them that a deed should be prepared, to be executed by her and her husband to Ackerman, conveying to the latter the whole of said tract of land. The plain purpose of this conveyance was, primarily, to enable Ackerman to make a deed to the intending purchaser for the part of the land of Mrs. Aller which he had agreed to buy, and secondarily, to enable Ackerman to make other conveyances if complainant desired to sell other portions or the whole of said land. The deed was so prepared, and Ackerman went with Mrs. Aller to her husband, and they procured the husband's signature thereto, upon the payment to him of $100, which was either furnished by her or advanced by Ackerman and afterwards repaid by her. This deed appears to have been duly executed by Mrs. Aller and her husband, and was recorded. Ackerman thereafter made conveyance of the part of the land which Mrs. Aller had agreed to sell. The evidence justifies the inference that the consideration which Ackerman received was used for Mrs. Aller's benefit.

The proofs above stated comprise, substantially, all the evidence having any bearing upon the relief now under consideration, viz., that of reformation of the deed in question. It seems obvious that they are insufficient to justify a decree for such relief.

Reformation of such a deed can only be decreed when the proofs convincingly establish that, by a mutual mistake of the parties thereto, the deed, as executed, expresses something which they did not intend, or omits to express something which they did intend. The claim of the bill is that there was omitted from the deed a clause declaring that Ackerman, the grantee, held the lands conveyed in trust for Mrs. Aller. There is not a syllable of evidence that the parties intended that such a clause should have been inserted in the deed. On the contrary, the insertion of such a clause could not have been within their intention, for it would have defeated their purpose in executing

the deed; for any intending purchaser would have declined to take title to any part of the land from Ackerman, under a deed so framed, without a conveyance from the *cestui que trust,* Mrs. Aller, which would have required the concurrence of her husband. The deed was undoubtedly made to avoid the necessity of seeking the concurrence of the husband to such conveyances, and it cannot be conceived that there was an intent to make it ineffective to serve the purpose for which it was designed.

It may be that Mrs. Aller did not properly appreciate the extent to which the delivery of this absolute conveyance put it in the power of Ackerman to deprive her of the land thus conveyed, and take it to himself. But there is no evidence that Ackerman took advantage of her ignorance, if she was ignorant. It is equally credible that she was willing to confide in the honesty of her friend, and the proofs show that she was justified in such confidence, for they make it appear that neither by word nor act did Ackerman ever make claim to the land conveyed, or deal with it other than as the trustee of Mrs. Aller.

The failure of proof to justify a decree of reformation must result in a dismissal of the bill, unless there is relief prayed for thereby which is within its scope and justified by the evidence.

The bill contains no prayer for general relief. Under such a prayer no question could arise but that an appropriate relief could be given in respect to matters falling within the scope of the bill.

The brief filed in behalf of Mrs. Aller contends that the prayer for a decree, that the deed "should be held, construed and regarded as having conveyed the said premises in trust," indicates relief that can be afforded upon the evidence. I am inclined to the view that, if the evidence justifies such relief, it ought to be afforded, and, if necessary, by an amendment of the bill, or even of its prayer. I will therefore consider the evidence to determine whether the facts proven justify relief of that nature.

It is first contended that the circumstances proved establish a case of trust by implication, or construction of law, which is excepted from the provisions of the statute of frauds, and is provable by parol evidence. In addition to the evidence pre-

Aller *v.* Crouter.

viously recounted, it was further proved that, notwithstanding
the execution, delivery and recording of the deed to Ackerman,
Mrs. Aller remained in possession of the property. She em-
ployed it in the business of taking boarders, from whom she
annually received an income, which she applied, with the knowl-
edge of Ackerman, in repairing the property, improving the
buildings thereon and keeping them in good condition. In
short, she acted, and was permitted to act by Ackerman, pre-
cisely as if she were the owner in fee-simple. This continued
for some eleven or twelve years, when she lost her mind and
became demented, in which state she continued to the day of
her death, more than thirteen years afterward. During all the
time Mrs. Aller was thus incapacitated Ackerman took charge
of the lands and buildings in question. He permitted her at
times to reside there with her niece, and at other times he
leased the premises. He received the rents. He paid the taxes,
or procured them to be paid by tenants on account of rents.
He looked after and paid for repairs upon the property. He
obtained insurance in his own name upon the buildings, and
in his book of account he opened and continued to keep an
account with Mrs. Aller, apparently including all his receipts
from the rent of the property, and all his disbursements on
account thereof, and on her account. These disbursements in-
clude items paid for taxes, insurance and repairs, as well as
items paid for care and treatment of Mrs. Aller in asylums and
sanitariums and elsewhere, where she was kept restrained by
reason of her infirmity. In short, he acted, during the whole
period of his life after she became insane, as an honorable man
would act with respect to property, the title to which he had
for the benefit of another person. His conduct was unchanged
to the day of his death.

The facts above stated are proved by witnesses present at the
negotiation between the parties, by witnesses who heard admis-
sions of Ackerman, by the handwriting of Ackerman in his
books of account, and upon some of the receipts for disburse-
ments upon the lands, and by a lease of the premises, hereafter
to be considered.

Upon this evidence the question is whether a resulting trust in the lands conveyed to Ackerman, for the benefit of Mrs. Aller, is sufficiently established to justify a decree for relief.

Resulting trusts have been considered, since the decision of Lord Hardwicke in *Lloyd* v. *Spillet, 2 Atk. 148,* to fall naturally within one of three classes, and the distinction has frequently been recognized by our courts. One class of such trusts arises when title to lands which are purchased, in whole or in part, with the money of one is taken in the name of another, our leading case in respect to that class being *Cutler* v. *Tuttle; 4 C. E. Gr. 549.* Another class of such trusts arises when a trust is declared in respect to a portion of the title to lands, and nothing is declared in respect to the remainder of the title, which was considered in *Duvale* v. *Duvale, 11 Dick. Ch. Rep. 375.* The remaining class, which is now more generally classified by the text-writers under the head of constructive trusts, is that where title to lands is acquired by fraud or *mala fide,* of which we have many examples in cases where solicitors or agents have purchased for their principals at judicial sales, and taken title in their own names.

The case with which we are dealing evidently does not fall within the second of these categories. Nor is there ground to contend that it is a case of constructive trust, for there cannot be the least pretence that Peter Ackerman acquired the title to the land by this deed by any species of fraud.

If, therefore, a trust results from the covenants, it must be because the case falls within the first class of trusts thus distinguished. But it is plain that it does not bear the ordinary characteristics of that class, because nothing is clearer from the evidence than that no consideration was paid for the deed. So far as Mrs. Aller, the real owner, was concerned, it was wholly without consideration and voluntary. Her husband had no estate therein, not even the estate by the curtesy initiate, and the small sum paid him would not support a trust for the whole property. If a trust results in this case, it must arise from the fact that the conveyance to Ackerman was purely voluntary, and conveyed to him an apparently absolute title, without a dollar having been paid therefor.

Whether a trust results under such circumstances was a matter considered by this court in *Lovett .v. Taylor, 9 Dick. Ch. Rep. 311.* The well-reasoned and satisfactory opinion of Vice-Chancellor Pitney in that case renders any discussion of the matter superfluous. It establishes convincingly that, by the settled law of this state and the weight of authority in this country, a resulting trust cannot be established by mere proof of the fact that no consideration was paid for a conveyance operating under the statute of uses. In my judgment, he properly criticises the modern English decisions as departures from correct principles. In this state I apprehend there can be no doubt on the subject, since the decisions of the court of last resort establishing that a grantor in one of the conveyances now used to pass title cannot.claim a resulting.trust in himself, upon proof that there was no consideration paid, such evidence being deemed to be in contravention of the express provisions of the statute of frauds, and contrary to the canon of evidence which forbids the admission of oral testimony to vary the effect of a written instrument. *Whyte* v. *Arthur, 2 C. E. Gr. 521; Osborn* v. *Osborn, 2 Stew. Eq. 385.*

It results that there is no proof upon which a resulting trust can be established by decree.

It only remains to consider the contention that, upon the evidence, an express trust has been established and may be decreed.

In dealing with this contention it is at once obvious that I must dismiss from consideration very much of the evidence taken by the master, some of which has been adverted to. The defendants did not attempt to impeach the credibility of the witnesses who gave the evidence. They did not contradict the evidence given. They produced no witnesses who testified that Peter Ackerman, in his lifetime, made claim to the lands in question. But the evidence was of a parol character. However adapted to convince my judgment that Peter Ackerman took the title to the lands without payment of a dollar for them, and thereafter held them for Mrs. Aller, and that, if living to-day, he would probably recognize the claim of her

heirs-at-law, if the evidence is such as I am prohibited by law from considering, the defendants have a legal right to insist that I must shut my eyes and close my ears to it.

. By the provisions of section 3 of our "Act for the prevention of frauds and perjuries" (*Gen. Stat. p. 1603*), which is a copy of the provisions contained in sections 7 and 8 of the English statute of frauds, it is enacted that all creations of trusts in lands (not being such as arise upon a conveyance by mere implication or construction of law) must be "manifested and proved" by some writing signed by a party having, by law, capacity to declare such trust, or by his last will in writing. The construction of this statute in our courts has been uniform and consistent. It excludes all parol testimony to the creation of an express trust in lands. It does not require that the trust shall be created by a writing, but only that it must be proved by such means. The written proof need not be contemporaneous with the creation of the trust, but will suffice if made after long intervals. The proof may be found and deduced from one or more writings, if they bear a relation to each other and import a trust. The writing need not be of a formal character, but a trust may be imported and proved by letters, deeds and other writings signed by the party to be charged. *Hutchinson* v. *Tindall, 2 Gr. Ch. 357; Smith* v. *Howell, 3 Stock. 349; Newkirk* v. *Place, 2 Dick. Ch. Rep. 477; Silvers* v. *Potter, 3 Dick. Ch. Rep. 539; Tynan* v. *Warren, 8 Dick. Ch. Rep. 313; Jauch* v. *De Socarras, 11 Dick. Ch. Rep. 538; Brown* v. *Combs, 5 Dutch. 36.*

There was produced in evidence in this case at least one writing which measures up to the requirements of the statute of frauds. It is an indenture of lease bearing date February 4th, 1891, at a time when Mrs. Aller was mentally incapacitated. It is proved to have been signed by Peter Ackerman. It is made between Peter Ackerman, as "trustee of Mary E. Pake, of the first part, and Elizabeth B. Kerr, of the second part." It demises to the party of the second part the "house, outbuildings and about seven acres of land at Hohokus," in Bergen county, known as the "Osborn Place" or "Pake Place," for the term of one year, with the privilege of three additional

years, at the yearly rent of $600. By the description the demised land is clearly identified as that which remained of the land conveyed to Peter Ackerman by the deed in question. That this instrument is an acknowledgment in writing signed by Peter Ackerman; that he held the lands in trust for Mary E. Pake, the name by which Mrs. Aller was designated, does not, in my judgment, admit of the least question. It is, to use the language of Mr. Perry, a writing in which the fiduciary relation between the parties, and its terms, can be clearly read. Standing alone, it satisfactorily establishes that Peter Ackerman held the naked title to the land for the use of Mrs. Aller, who had the beneficial interest therein.

While parol evidence of an express trust is to be rejected, yet, when an instrument is claimed to be an acknowledgment and proof of such a trust, the circumstances under which it was made may be used to elucidate its construction. *Morton* v. *Tewart, 2 Younge & C. 66.* In this connection the facts that the conveyance in question had been made and recorded many years before; that Mrs. Aller remained thereafter in possession of the lands until she became incapacitated, and that this lease was afterward made by Ackerman, the grantee in the conveyance, are extremely significant.

Nor can I yield to the defendants' contention that this instrument fails to disclose the terms of the trust. It affords as complete a description of the terms as would be afforded by a conveyance of lands to A in trust for B. There could be no doubt that such a conveyance would vest the legal title in A, and B would acquire thereby the complete beneficial interest, which he could convey or devise, and which would descend to his heirs-at-law. Precisely such a trust is acknowledged and proved by this instrument.

There are in evidence other writings which, I think, may be read with the lease above considered and aid in its construction. Upon one page of the book of account kept by Peter Ackerman is an account headed thus: "Mary E. Pake account with Peter Ackerman, trustee." The heading is shown to be in Ackerman's handwriting. Although this is not a subscription, it is a "sign-

Aller *v.* Crouter.

ing" within the meaning of the statute of frauds. *Smith* v. *Howell, ubi supra.* The account which follows, on that and other pages, contains entries whereby he has charged himself with rent received from Mrs. Kerr, the lessee in the lease, and allowances in his favor for payments for Mrs. Aller's benefit. There are also other entries for rent in subsequent years and allowances thereon. It may be added that the account shows that Ackerman, before he died, had advanced for Mrs. Aller's benefit more money than he had received.

There is also evidence that Peter Ackerman kept the vouchers for payments made by him on Mrs. Aller's account in an envelope, on which he wrote "Papers of Mary E. Pake, Peter Ackerman, trustee," but the envelope was not produced. Many receipted bills for work done or materials furnished for the property were produced in evidence. They showed, in many instances, that the work or materials furnished for the property had been charged to him, and he had added to his name the word "trustee." But, as it is doubtful whether these writings can be deemed to have been signed by him, I have given them no consideration. The lease and the account are signed by him, and thereby, in my judgment, he has acknowledged a trust, which is proved in conformity with the provisions of the statute.

It results that a decree declaring the trust would be supported by this evidence.

If counsel desire it, I will hear them further on two questions: (1) Whether such a decree can be made without amendment of the bill, and (2) what the terms of the decree should be.