**B. H. KLEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

**B. H. KLEIN AND BABS L. KLEIN, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket Nos. 21014, 21015. Promulgated April 27, 1950.

*James J. Carter, Esq.*, and *Thos. B. Hill, Jr., Esq.*, for the petitioners.
*S. Earl Heilman, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: The respondent contends that under Alabama statute there was no valid trust by petitioner for the two children, since the Sellers deed was not signed by him; also that, assuming a valid trust, under Alabama statute there was no genuine trust, considering the control and management reserved to petitioner, and under all of the facts. He further says that if there was a trust under state statute and a genuine trust within the meaning of the Internal Revenue Code, the income in question is nevertheless, under principles announced in *Helvering* v. *Clifford*, 309 U. S. 331, taxable to the petitioners. Regulations 111, sec. 29.22 (a)–1, he argues, so provides. The petitioner, of course, takes the view that the trust was valid and genuine and prevents taxation of the income therefrom to him.

We have no difficulty with respondent's first contention. In *Randolph* v. *East Birmingham Land Co.*, 104 Ala. 355; 16 So. 126, a father, much as here, purchased real estate, having the deed made to him as trustee for his son, with rather detailed power in him as trustee to manage and sell for the benefit of the son. Though the opinion says that he "joined said Briggs [the seller] in the execution of the conveyance," it is not said that he signed, and we take this to mean that he joined by causing conveyance to him in trustee capacity and by accepting the deed. It was held that trust was created the same as if the

deed was from the father to the son creating trust. In *McCarty* v. *McCarty*, 74 Ala. 546, it appears that a deed was executed to a third person "for the sole use, profit and benefit of" an intended wife, with remainder to surviving child or children. It was held that trust was created. The case seems in principle and fact parallel to this one.

In *Allen* v. *Crouter*, 54 Atl. 426, there was deed from A to B, who then made a lease to a third person, demising the property "as trustee for A." It was held, by the Court of Chancery of New Jersey, that an express trust was created. The statute there, of course, only required that writing prove the trust.

However, even if we assume that the deed from Sellers and wife did not of itself create a trust under section 141 of Title 47 of the Code of Alabama, the lease and mortgage, both signed by the petitioner, did create and prove such trust, when considered with the deed. The trust need not be found in one instrument and the instruments need not all be signed. *Wiggs* v. *Winn*, 127 Ala. 621; 29 So. 96. Here the lease and mortgage both recognized existence of the trust. A trust may, moreover, be created by one person and declared by another. *Straw* v. *Mower*, 130 Atl. 687, which, quoting Perry on Trusts, holds that, though (like that of Alabama) the Vermont statute says that a trust of realty can not be "created" except in writing, nevertheless if manifested and proved in writing a trust complies with the statute, and can rest on a pleading, note, letter or memorandum "disclosing facts which created a fiduciary relationship." In *Hodge* v. *Joy*, 92 So. 171, the Alabama Supreme Court held that to create a trust it is only necessary that an instrument manifesting the nature, subject matter, and objects of the trust with reasonable certainty be signed by the party to be charged, and that this need not be executed contemporaneously with the transfer of title and creation of the trust, but may be done later. A letter was found sufficient.

Bogert on Trusts, vol. 1, ¶90, recognizes that more than one instrument may be used to prove a trust and in ¶89 mentions a contract or lease as among such instruments. The deed not being merely to petitioner as "trustee," but expressly naming the beneficiaries and expressing the trust, and the petitioner having later, expressly as trustee for the children, leased and mortgaged the property, we conclude under the above authorities that there was a valid trust from petitioner to his two children.

Nor do we find more effective the respondent's second point that, assuming a valid trust in Alabama, it was not genuine under the Internal Revenue Code and Regulations 103, section 19.3797–1, and Regulations 111, section 29.3797–1. The regulations relied on merely point out that the revenue act makes its own classification and standard therefor, and defines trust as:

* * * The term "trust," as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under the ordinary rules applied in chancery and probate courts. * * *

In this, however, we find nothing banning the trust here involved. It, we have above found, was created by declaration of the grantor, and the petitioner as trustee took title to protect and conserve the property "as customarily required under the ordinary rules applicable in chancery and probate courts." We have no doubt that such tribunals would protect the petitioner's children thereunder.

The respondent points out that the petitioner's original investment was $3,500 and later $4,000 in paying off the mortgage, that he improved the property by the brick building, paying out additional expenses in the process, and suggests that the original gift "in trust" was limited to the $3,500. The trust expressed in the Sellers deed expressly gave the trustee power to improve the property, and to do all things as in his discretion he deemed wise for the use and benefit of the beneficiaries. We see nothing beyond the terms of the trust in his action in mortgaging, leasing, and erecting the building, and the property when improved paid in rents the principal cost of the improvement, so that to that extent at least the property as so improved is seen as an integral part of the trust corpus. The other amounts expended upon the property were advanced by the petitioner, individually, and later in part repaid to him from rents received upon the property. This being so, they do not appear as any part of the trust.

That no gift tax return was filed upon the original gifts of $7,587 (the first $3,500 cash consideration and $4,087, including interest, paid on the mortgage) is explained as ignorance of the gift tax provisions. In any event, such failure to file a gift tax return does not invalidate the trust.

Though respondent calls attention to the fact that prior to December 31, 1941, the account involving the property was kept in petitioner's regular business books, with no indication thereon of trust, but only "Cloverdale Property (Memo.)," it is equally significant that thereafter and through most of the period involved the account was headed "B. H. Klein Trustee Loan." Moreover, the appellation of the account, up to December 31, 1941, must be considered with the express recognition of trustee status by the lease and mortgage, and the assessment of the property to the petitioner as trustee for the children. There is ample recognition at all times of the trust. Why some money was loaned and not made the subject of gift appears immaterial. Nor do we see significance in the fact that some items loaned were for income tax of the children. They were repaid and seem to have no part in this matter. We do not in these circumstances find evidence of

lack of reality or genuineness of trust as argued by the respondent. Though this family matter has been given close scrutiny, as required, we can not discern that it is one of form and lacking substance. Rather, the father seems to have definitely and legally bound himself as trustee for his children, retaining no power except that which is stated in the trust instrument. We conclude that the trust was genuine.

There remains therefore for consideration the question whether under the principles announced in *Helvering* v. *Clifford*, *supra*, the income here involved should be taxed to the petitioner. Thereunder, the grantor here being the trustee and the beneficiaries being his children, "special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devises which, though valid under state law, are not conclusive so for as § 22 (a) is concerned." We have analyzed the terms of the trust, and all circumstances attendant upon its creation and operation, in giving this matter the requisite special scrutiny. After doing so we are of the opinion that this matter is not controlled by the *Clifford* case. The trust was for a long period, until age twenty-one on the part of the younger child, a period of about fourteen years. It was irrevocable in that no provisions for revocability or alteration are contained. When the younger child arrived at age twenty-one the trust would terminate, and the trust corpus thereupon "pass to and vest in" the two children share and share alike. The petitioner retained no power to amend the terms or to modify or change the shares of the beneficiaries. It is true that there is no specific provision that accumulated income, as well as trust corpus, shall at termination of the trust vest in the beneficiaries, but the general clauses provide that all things are to be done in trust for the use and benefit of the children, including collection, use and appropriation of income; and the respondent does not suggest reliance upon or significance in the lack of specific language that income accrued shall pass, upon termination, to the beneficiaries. In this situation we can see nothing demonstrating mere temporary reallocation of family income. It is permanently severed from that of the petitioner, unless, as argued by the respondent, the broad powers of control and management, and discretion in him as to such control over the trust were such as to leave him "in practical effect the owner of its income." We can not find this to be true here. All power given was in petitioner "as such trustee" and "for the use and benefit" of Babs Klein and Burke Hart Klein." He had no individual status or power of control and his discretion, as trustee, was under the jurisdiction and power of the courts of equity. Nothing that he could do could inure to his individual benefit, or did so. During the taxable years the entire income from the property was devoted

directly to payment of the mortgage, the rentals from the lessee being paid directly to the mortgagee. None of the income, it is stipulated, has at any time been withdrawn or used for the maintenance, support, or upkeep of the petitioner's children, the beneficiaries. Under all of those circumstances there seems no place for application of the principles set forth in the *Clifford* case. The respondent, however, refers to and relies upon T. D. 5488, 1946–1 C. B. 19, adding section 29.22 (a)–21 to Regulations 111, and T. D. 5567, 1947–2 C. B. 9, amending T. D. 5488. However, though assuming but expressly not deciding the applicability of such regulation to these taxable years previous to promulgation of the regulations, we find them, in effect, and as far as here concerned, providing that administrative control "exercisable primarily for the benefit of the grantor rather than the beneficiaries" causes taxation to the grantor, and that such exercise for grantor's benefit is found (a) if the grantor may purchase, exchange, or otherwise deal with trust corpus or income for less than adequate and full consideration, or (b) if the grantor can borrow corpus or income without adequate interest in any case, or without adequate security. It is also provided that there is presumption that the power is exercisable in a fiduciary capacity primarily in the interest of beneficiaries, to be rebutted only by clear and convincing proof *contra*. It is obvious, we think, that the regulations above do not cause taxation to the petitioner under the facts here. The administrative control is affirmatively shown to be primarily in the beneficiaries' interest. Klein could not purchase or deal with trust corpus or income for less than an adequate consideration, and could not borrow without adequate interest or security. On the face of the regulations, such power is not indicated, for broad language as to power exercisable, it is expressly stated in the regulation, "does not indicate" such prohibited power of purchase, dealing or borrowing. The actual administration of the trust, the regulation recites, may so indicate; but here such actual administration clearly shows no such prohibited exercise of power. Without more, we conclude that the regulations cited add nothing to the *Clifford* case to indicate taxability of the petitioner. We conclude and hold that the Commissioner erred in including the trust income in that of the petitioner.

*Decisions will be entered for the petitioners.*