HENRY H. POTTER & others *vs.* MARY S. KIMBALL,
administratrix, & others.

Essex.   November 4, 1903. — June 21, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Equity Jurisdiction,* Equitable mortgage, Laches.   *Trust.   Frauds, Statute of.
Limitations, Statute of.*

If a creditor with the consent of his debtor takes on execution and also by a judg-
ment on a writ of entry certain real estate of the debtor to hold as security for
the debt, an equitable mortgage is created which will be enforced in equity as a
trust.

The statute of frauds is no defence to a bill in equity to establish an oral trust by
showing that the defendant holds certain real estate as an equitable mortgage or
in trust for the plaintiff on being paid the debt for which it is held as security.

Where one holds real estate by an absolute legal title subject to an oral trust which
makes him in equity a mortgagee, the statute of limitations does not begin to
run against the equitable mortgagor until the equitable mortgagee repudiates
the trust.

The mere fact that for a period of twenty years no bill in equity was brought to
establish an oral trust in real estate held by an absolute legal title does not
amount to laches, if during the whole of that period the trust was recognized
by the parties and the delay was not accompanied by any change for the
worse in the situation of the holder of the legal title.

BILL IN EQUITY, filed March 1, 1902, by the heirs at law of
John H. Potter and the administrator of his estate against the
widow and heirs at law of William B. Kimball, to establish a
trust in certain real estate in Topsfield, and for an accounting,
alleging, that the real estate was worth about $4,000 and was
transferred as security for an indebtedness of Potter to Kimball
of $765.31, having been taken by Kimball with the consent of
Potter by attachment and purchase at execution sale in 1881 and
also by a judgment on a writ of entry in 1882, that Kimball died
intestate on September 17, 1888, and Potter died intestate on
October 1, 1901, having for a period before his death become
infirm in body and mind and finally of unsound mind and incapa-
ble of attending to business, with further allegations, which are
described in the opinion, as to the property having been held by

Kimball during his life and by Kimball's widow and heirs after his death subject to the equitable claims of Potter and after his death of the plaintiffs.

In the Superior Court the defendants demurred on the grounds stated in the first paragraph of the opinion. The case was heard by *Holmes*, J., who made a decree sustaining the demurrer and dismissing the bill. The plaintiffs appealed.

The case was argued at the bar in November, 1903, before *Knowlton*, C. J., *Morton*, *Barker*, *Loring*, & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*A. P. White* (*G. C. Richards* with him,) for the plaintiffs.

*E. J. Powers*, for the defendants.

MORTON, J. This case comes here on appeal by the plaintiffs from a decree sustaining the demurrer and ordering the bill to be dismissed. The grounds of demurrer were first the general one of want of equity, and then, in the order stated, laches, the statute of limitations, the statute of frauds, and a complete and adequate remedy at law. The ground or grounds on which the demurrer was sustained and the bill dismissed are not stated anywhere in the record, and there is no waiver on the part of the defendants of any of the causes of demurrer, though the defence principally relied on is that of laches. This renders it necessary to consider them all.

1. As to want of equity. It seems to us that, fairly construed, the bill states a case for equitable relief. It alleges in substance that pursuant to an understanding between Potter and Kimball the latter acquired title through legal proceedings, first by a writ of summons and attachment and then by a writ of entry, to the property in question, for the purpose of holding it as security for what should appear upon a final settlement and accounting between Potter and himself to be due from Potter to him, and that Kimball continued to so hold the property during his life, and that after his death the widow and heirs so held it and treated it as long as Potter lived, and that the present holders of the title took it with full knowledge of all the facts and circumstances under which Kimball acquired and held the title, and that they dealt with the property on a like footing during Potter's lifetime. Without here going into a detailed analysis of the bill or a recital of its various allegations, it seems

to us, as we have said, that, fairly considered, this is what in substance and effect it alleges. So considered, the bill sets out a case in which the defendants hold the title by way of equitable mortgage, or in trust for the benefit of Potter's heirs upon being paid what upon a final accounting shall appear to be due. *Campbell* v. *Dearborn*, 109 Mass. 130. 1 Perry, Trusts, (5th ed.) §§ 166 *et seq.* The fact that in the summons and attachment suit the execution was returned satisfied by a levy on the property, and in the writ of entry execution for possession was issued, served and returned, would not prevent the transaction from being treated according to its real nature as a mortgage. *Cullen* v. *Carey*, 146 Mass. 50.

2. If the defendants hold the property by way of equitable mortgage, or, what amounts to the same thing, in trust for Potter's heirs upon being paid what shall appear to be due, it is manifest that the statute of frauds is not a defence. *Campbell* v. *Dearborn, ubi supra.*

3. Neither is the statute of limitations a defence. According to the allegations of the bill there was no repudiation of the mortgage or trust till after Potter's death in 1901, and the statute would not begin to run till such repudiation occurred. *Jones* v. *McDermott*, 114 Mass. 400, 403.

4. The defence principally relied on is laches. Potter delayed during his lifetime to take steps to enforce his rights, but so far as appears from the allegations of the bill, the delay did not operate in any way to the prejudice of Kimball or of his estate. On the contrary according to the allegations of the bill Kimball recognized his obligation to account for the property during his life, and after his death those representing his estate recognized it during Potter's life. One of the parcels conveyed to Kimball was sold by Kimball's heirs in 1890 with Potter's assent and the proceeds applied towards Potter's indebtedness. Potter's condition during the latter part of his life, as alleged in the bill, also furnished some excuse, if excuse were needed, for the delay. Delay unaccompanied by any change for the worse in the situation of the parties, and acquiesced in by those interested with a continuous recognition on their part of the real nature of the transaction, does not furnish of itself any sufficient reason for refusing the relief asked for. Story, Eq. Jur. § 1520 *a.* It is

not contended that since Potter's death there has been any unnecessary delay in instituting proceedings.

The result is that, in the opinion of a majority of the court, the decree must be reversed and the demurrer overruled.

*So ordered.*