HOLLIS R. BAILEY, trustee, vs. CAROLINE A. WOOD & another.
SAME vs. MERCY L. WOOD.
SAME vs. SAME.

Suffolk.   January 23, 1911. — February 26, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, SHELDON, &
DECOURCY, JJ.

*Bankruptcy.   Trust.   Frauds, Statute of.   Merger.   Mortgage.*

A woman, who owned certain mortgages of real estate, was averse to making a
will but wished that upon her death her property should go to her brother's
wife and children.   She knew that upon her dying intestate her brother
would inherit her property as her only heir and next of kin and asked him, if
he survived her, to distribute her estate among his wife and children.   Her
brother agreed to do this and relying upon his promise she refrained from
making a will.   Upon her death her brother, who then was insolvent, in per-
formance of what he considered to be his duty and obligation distributed the
whole of the estate to his wife and children, transferring the mortgages to a
daughter as a part of her share.   About a year and a half later he was adjudi-
cated a bankrupt.   The trustee in bankruptcy of his estate brought a suit
in equity against the daughter to set aside the assignment of the mortgages.
*Held,* that the oral trust, which had been executed in full, could be proved by
oral evidence, even if it concerned land, and that, although the bankrupt was
insolvent at the time he transferred the mortgages to the defendant, those trans-
fers were made lawfully in the execution of a valid trust and withdrew from
creditors no property to which the plaintiff as trustee in bankruptcy was entitled.
Where one, who holds the equity of redemption in certain real estate subject to a
mortgage, inherits such mortgage as the sole heir and next of kin of its owner,
but takes the mortgage with other property subject to an oral trust which he
executes in full, and in accordance with the terms of that trust transfers the
mortgage to the person equitably entitled to it, the existence of the trust pre-
vents the extinguishment of the mortgage by merger.

THREE BILLS IN EQUITY, filed in the Superior Court on March
31, April 4 and June 16, 1908, by the trustee in bankruptcy of
the estate of James A. Wood of Cambridge, the first against Caro-
line A. Wood, the wife of the bankrupt, and Mercy L. Wood, his
daughter, and the other two against Mercy L. Wood alone, seeking
to compel the assignment and conveyance to the plaintiff of
certain property alleged to belong in equity to the estate of the
bankrupt.

The cases were referred to Robert Cushman, Esquire, as master.

He found the facts which are stated in the opinion and also the following facts:

James A. Wood filed a voluntary petition in bankruptcy on January 24, 1908, and thereupon was adjudicated a bankrupt, and on February 15, 1908, the plaintiff was appointed the trustee of his estate in bankruptcy.

The bill filed on March 31, 1908, related to certain real estate on Glendale Avenue in Somerville and to a mortgage thereon. On August 4, 1897, James A. Wood took a second mortgage for $750 on this property, subject to a first mortgage for $2,000. In August, 1898, the property was sold for taxes. On June 26, 1899, the first mortgage on the property was purchased by Sarah B. Wood, the sister of the plaintiff mentioned in the opinion, and was assigned to her. On March 28, 1900, the owner of the tax title conveyed that title to the defendant Caroline A. Wood. Shortly thereafter James A. Wood foreclosed his second mortgage and the purchaser at the foreclosure sale conveyed to him the title acquired by the foreclosure sale by a deed dated July 9, 1900. On August 6, 1902, Sarah B. Wood died intestate, leaving as her sole heir and next of kin James A. Wood, who on November 14, 1902, was appointed the administrator of her estate. On April 18, 1906, James A. Wood conveyed the first mortgage to the defendant Mercy L. Wood, the defendant Caroline A. Wood joining in the deed to release her dower. On the same day James A. Wood and his wife, the defendant Caroline A. Wood, in her right conveyed the property to Mercy L. Wood. On the same day James A. Wood, as administrator of the estate of Sarah B. Wood, executed to the defendant Mercy L. Wood a discharge of the first mortgage.

The bill filed on April 4, 1908, related to certain real estate on Broadway in Cambridge and a second mortgage thereon. On June 26, 1889, James B. Wood purchased this property and gave to the vendor a first mortgage for $4,500 to secure the payment of the purchase money. On March 7, 1901, he mortgaged the property to his sister Sarah B. Wood for $6,500, subject to the first mortgage. On the death of Sarah B. Wood on August 6, 1902, this second mortgage passed to James A. Wood as administrator of the estate of his sister, whose sole heir and next of kin he was. On September 11, 1906, James A. Wood transferred the second mortgage and note to the defendant Mercy L. Wood.

The bill filed on June 16, 1908, related to a mortgage for $800 on certain real estate on Raymond Avenue in Somerville, which on March 14, 1896, was assigned by its holder to Sarah B. Wood, and on her death passed with the mortgage note to James A. Wood as the administrator of her estate. On May 28, 1906, as such administrator he assigned the mortgage and note to the defendant Mercy L. Wood.

James A. Wood failed and made a common law assignment in November, 1907, and filed a voluntary petition in bankruptcy in January, 1908, as stated above. Sprague and the Robinsons, mentioned below, were lumber producers in Maine.

In a supplemental report, filed after a recommittal of the case to him, the master made the following findings:

"I find that on April 18, 1906, the date of the first conveyance complained of, Wood's total liabilities amounted, as previously reported, to about $292,000. As stated in the first report, all but about $15,000 of this liability grew out of acceptances and indorsements for the benefit of Sprague and the Robinsons, which they ought to have paid. . . . I find that Wood's absolute liabilities, that is, his liabilities as to which he was not entitled to exoneration from anybody, amounted to about $66,000.

"With respect to the liabilities of $226,000 incurred for the benefit of others (Sprague and the Robinsons) as to which Wood was entitled to be exonerated, I find on all the evidence that the obligations of the parties bound to exonerate Wood were at the date in question good for their face value, and that there was no reasonable probability that Wood would ever be called upon to pay the same.

"As previously reported, Wood had about $75,000 of good quick assets and about $75,000 more of slow, but probably good assets. These were his assets outside of the property, the conveyance of which is complained of in these suits. At the date in question Wood also held promissory notes of the Robinsons, not indorsed nor discounted, amounting to about $13,000, which the Robinsons had sent him to be discounted, and which are not included in said assets.

"I find therefore on all the evidence that Wood was solvent at the date of the first conveyance complained of, namely, April 18, 1906.

"I further find that, although the figures were changing somewhat from day to day, as drafts and notes were being retired and issued, and lumber was being received and sold, Wood's condition on the other two dates in question, to wit, May 28, 1906, and Sept. 11, 1906, was not materially different from that on April 18, 1906." ·

The cases were heard by *Pierce,* J., upon the plaintiff's exceptions to the master's report and supplemental report and a motion of the plaintiff again to recommit the cases to the master.

The judge made the following report of his rulings:

"It appeared by the master's report that he had excluded evidence as to the actual condition of solvency or insolvency of Sprague and the Robinsons, — the master's reason for such exclusion being that only what James A. Wood knew or ought reasonably to have known as to such facts was admissible.

"I was of the opinion and ruled against the defendants' objection that the master erred in excluding such testimony.

"I was also of the opinion and ruled against the defendants' objection that so far as this aspect of the case was concerned all the plaintiff's exceptions should be sustained and that the cases should be recommitted to the master with instructions to admit all further competent evidence offered by either party, and to make findings upon the following questions under the following directions, to wit: [Here followed five questions.]

"It appearing, however, by the master's report that all the property claimed by the plaintiff in cases numbered 5464 and 5637 [the second and third cases] came originally from Sarah B. Wood to James A. Wood, I was of the opinion and ruled against the plaintiff's objection that upon the facts found by the master no part of said property originally belonging to said Sarah B. Wood could be recovered by the plaintiff for the benefit of creditors.

"In case number 5451 [the first case], it appearing by the · master's report that a part of the property claimed by the plaintiff came originally from Sarah B. Wood to James A. Wood, I was of the opinion and ruled against the plaintiff's objection that upon the facts found by the master no part of said property originally belonging to Sarah B. Wood could be recovered by the plaintiff for the benefit of creditors.

"As to the remaining portion of the property claimed by the plaintiff in case number 5451, I was of the opinion and ruled

against the defendants' objection that there was no trust created and that the plaintiff was entitled to have the case recommitted to the master as aforesaid."

By agreement of the parties the judge reserved and reported the cases and all questions therein for determination by this court upon the pleadings, the master's original report, the plaintiff's exceptions thereto, the plaintiff's motion to recommit, the order of the court thereon, the master's supplemental report, the plaintiff's exceptions thereto, the plaintiff's motion to again recommit, and the rulings of the judge, such decree to be entered as equity and justice might require.

The cases were argued at the bar in January, 1911, before *Knowlton,* C. J., *Morton, Loring, Braley,* & *Rugg,* JJ., and afterwards were submitted on briefs to all the justices then constituting the court except *Loring,* J.

*H. R. Bailey,* (*A. L. Millan* with him,) for the plaintiff.

*G. W. Anderson,* (*F. M. Whitman* with him,) for the defendants.

BRALEY, J.   The trustee in bankruptcy of James A. Wood brings these suits against Caroline A. Wood and Mercy L. Wood, who are respectively the wife and daughter of the bankrupt, to set aside certain conveyances alleged to have been fraudulently made by him to Mercy L. Wood of his interest in three parcels of real property, and for such further relief as may be necessary to vest the title in the plaintiff.   By the statute the assignment conveyed the property of the bankrupt, and, although the conveyances in question were made nearly two years before the date of bankruptcy, the plaintiff was clothed with the rights of creditors to reach as assets of the estate property fraudulently conveyed at common law.   U. S. St. 1898, c. 541, § 70.   *Knowlton* v. *Moseley,* 105 Mass. 136.

The mortgages which were assigned by the conveyances were found by the master to have been at her death the sole property of Sarah B. Wood, a sister of the bankrupt, who was her only heir at law and upon her decease was duly appointed administrator of her estate.   If through inheritance he took the property charged with a trust, and the conveyances were in performance of the trust, and for no other purpose, it could not have been seized by creditors, and the plaintiff has not succeeded to any enforceable interest.   *Sibley* v. *Quinsigamond National Bank,*

133 Mass. 515, 522, 523. *Low* v. *Welch,* 139 Mass. 33. *Stratton* v. *Edwards,* 174 Mass. 374. *Emery* v. *Boston Terminal Co.* 178 Mass. 172, 184. *King* v. *Cram,* 185 Mass. 103, 104.

It is important to a clear understanding of the nature of the bankrupt's title to refer to the master's explicit findings, to which on this question no exceptions were taken. Sarah B. Wood for many years was a member of his household, and during the four or five years immediately preceding her death frequently expressed to him a desire that whatever property she might leave should go to his wife and two children. But, being an invalid, she could not anticipate how much of her savings might be required for her comfortable support, and for this reason was averse to making a testamentary disposition of the estate, while she fully realized that upon intestacy he would come into possession as her heir. It was during these interviews that she requested him to distribute the estate between his wife and children in such proportions as in his discretion he deemed advisable. The master's conclusions, that a definite understanding and agreement were reached that she should not make a will, but that the property was to pass by descent to be distributed between his wife and children, and that she refrained from making a will in their favor, relying upon his assurance that, if he survived, distribution would be made as she had requested, are decisive as to the facts. The intention of the parties, that when received the property was to be disposed of in a particular way and for the sole benefit of those who had been designated as beneficiaries, being manifest, no precise form of words was necessary to create a trust, and the terms " trust " and " trustee " were unessential. *Packard* v. *Old Colony Railroad,* 168 Mass. 92. *Sawyer* v. *Cook,* 188 Mass. 163, 165. Nor was it necessary to inform the beneficiaries that a trust existed in their favor, as they would have been clothed with the equitable, when he became vested with the legal title. *Woodward* v. *James,* 115 N. Y. 346, 356. *Fletcher* v. *Fletcher,* 4 Hare, 67, 74. It has been held under R. L. c. 74, § 1, cl. 4, and c. 147, § 1, that an express trust concerning land, if executory, must be evidenced by an instrument in writing, or it cannot be enforced. *Tourtillotte* v. *Tourtillotte,* 205 Mass. 547. *Kennerson* v. *Nash,* 208 Mass. 393. And if the oral agreement had been reduced to writing and signed by the parties, or if at her death he had executed and recorded a

proper declaration, an effectual trust would have been established against all persons claiming under him. *Urann* v. *Coates,* 109 Mass. 581, 585. *Blodgett* v. *Hildreth,* 103 Mass. 484, 486. *Holmes* v. *Winchester,* 135 Mass. 299, 305. *Barrell* v. *Joy,* 16 Mass. 221. *Silvers* v. *Potter,* 3 Dick. 539. *Gardner* v. *Rowe,* 2 Sim. & Stu. 346; *S. C.* 5 Russ. 258. But, having come into a court of equity for redress, the plaintiff must recognize the equitable rights of the defendants which are to be ascertained as of the date of bankruptcy. The agreement was entered into in good faith. It was not illegal or a mere nullity. It could be proved by parol evidence; and in reliance on its terms Sarah B. Wood died intestate. *Cahill* v. *Bigelow,* 18 Pick. 369, 372. *Coughlin* v. *Knowles,* 7 Met. 57. *Potter* v. *Kimball,* 186 Mass. 120. The master reports that James A. Wood considered himself bound to distribute the property thus inherited as his sister had requested and he had promised; and that in performance of what he considered to be his plain duty, and without any intent to hinder, delay or defraud creditors, distribution of the entire estate was made between his wife and children, including the portion conveyed to Mercy L. Wood. See *Haigh* v. *Kaye,* L. R. 7 Ch. 469. It was said by this court speaking through Chief Justice Gray in *Olliffe* v. *Wells,* 130 Mass. 221, 225, that "where a trust not declared in the will is established by a court of chancery against the devisee, it is by reason of the obligation resting upon the conscience of the devisee, and not as a valid testamentary disposition by the deceased." The transaction may be none the less fraudulent in a court of equity, where the sole heir at law induces the ancestor to die intestate, honestly intending at the time to comply with his requests as to the distribution of the estate, but upon receiving the inheritance changes his mind, and in disregard of his express promise deliberately appropriates the property to his own use. *Jones* v. *Bradley,* L. R. 3 Ch. 362, 363, 364. *McCormick* v. *Grogan,* L. R. 4 H. L. 82, 88, 97. *French* v. *French,* [1902] 1 I. R. 172, 187, 224, 225. The statute of frauds and the statute of wills have been held not to bar relief in cases springing from the perpetration of fraud. *Potter* v. *Kimball,* 186 Mass. 120. *Young* v. *Peachy,* 2 Atk. 254. *Rolfe* v. *Gregory,* 4 DeG., J. & S. 576, 579. *Jones* v. *Bradley,* L. R. 3 Ch. 362, 363, 364. But we need not consider whether the fiduciary relations were such that a constructive trust

existed, which the defendants could have enforced if Wood had acted unconscientiously. Nor is it of importance what effect, if any, the doctrine of the common law which prevails in this Commonwealth, that the mortgagee as between himself and the mortgagor is seised in fee of the premises, would have upon an executory agreement resting in parol for the transfer of the interest of the mortgagee. *Ewer* v. *Hobbs*, 5 Met. 1, 3. *Ayres* v. *Waite*, 10 Cush. 72, 74. *Adams* v. *Parker*, 12 Gray, 53. Or whether, the mortgages having been in equity merely security for the payment of the mortgage debts in which an express trust, notwithstanding the provisions of R. L. c. 147, § 1, could be created by parol, James A. Wood, who as administrator was vested under R. L. c. 150, § 7, with the legal title of the mortgagee as personal property, held it subject to the trust. *Sturtevant* v. *Jaques*, 14 Allen, 523, 527. *Childs* v. *Jordan*, 106 Mass. 321. *Thacher* v. *Churchill*, 118 Mass. 108, 109. *Currier* v. *Studley*, 159 Mass. 17, 29. *Potter* v. *Kimball*, 186 Mass. 120. *Look* v. *Kenny*, 128 Mass. 284, 286. 1 Perry on Trusts, (4th ed.) § 86. And the defendant Mercy L. Wood, having the equitable title to the mortgage debts, could have compelled their transfer with an assignment of the mortgages. *Barnes* v. *Boardman*, 149 Mass. 106, 114. The parol trust or agreement, having been fully executed, was unaffected by the statute of frauds, which cannot be invoked to defeat the estate conveyed. *Stone* v. *Dennison*, 13 Pick. 1, 4, 5. *Coughlin* v. *Knowles*, 7 Met. 57. *Bush* v. *Boutelle*, 156 Mass. 167, 170. *Blackwell* v. *Blackwell*, 196 Mass. 186, 190. *Tillinghast* v. *Coggeshall*, 7 R. I. 383, 393. *Robbins* v. *Robbins*, 89 N. Y. 251. *Silvers* v. *Potter*, 3 Dick. 539. *Janes* v. *Falk*, 5 Dick. 468. *Sackett* v. *Spencer*, 65 Penn. St. 89, 99. *First National Bank of Appleton* v. *Bertschy*, 52 Wis. 438, 454, 455. *McCormick Harvesting Machine Co.* v. *Griffin*, 116 Iowa, 397. *Neves* v. *Scott*, 9 How. 196. *Bowen* v. *Chase*, 94 U. S. 812, 818. *Gardner* v. *Rowe*, 2 Sim. & Stu. 346; *S. C.* 5 Russ. 258. *Milroy* v. *Lord*, 4 DeG., F. & J. 264, 274.

We cannot accede to the further contention of the plaintiff, that if Wood was insolvent the conveyances necessarily must be treated as fraudulent. The bankrupt's insolvency at the date of the transfers must be determined from all his indebtedness, both primary and contingent, and from the very full statements in the master's report we have no doubt that he was unable to meet

his outstanding financial obligations as they might mature in the ordinary course of business. *Chipman* v. *McClellan,* 159 Mass. 363, 368, 369. A conveyance, however, by an insolvent debtor without any valuable consideration moving from the transferee, may or may not be fraudulent. It is primarily a question of fact as was said in *Matthews* v. *Thompson,* 186 Mass. 14, 22, 23, where many of our cases are collected and reviewed. See also *Lerow* v. *Wilmarth,* 9 Allen, 382, 386; *Draper* v. *Buggee,* 133 Mass. 258, 262; and *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117, 121. In the case of *Deshon* v. *Wood,* 148 Mass. 132, on which the plaintiff places much reliance, the insolvent debtor made and carried out a marriage settlement with intent to defraud his creditors, and the transaction was set aside by a majority of the court, although the wife did not participate in the fraud. The transfers of the mortgages in controversy were not in payment of antecedent debts or to withdraw assets from the reach of creditors; nor were they intended as conveyances of the bankrupt's estate, but to convey only the legal title to property which now must be treated as having been held under a valid trust and conveyed lawfully prior to bankruptcy in execution of the trust. *Stratton* v. *Edwards,* 174 Mass. 374, 378. *Sackett* v. *Spenser,* 65 Penn. St. 89, 99.

In the last two suits at bar it appears that all the property transmitted came originally from Sarah B. Wood, and the plaintiff's exceptions to the master's report having become immaterial by our decision, they must be overruled, and the bills severally dismissed with costs.

But in the first suit, while the first mortgage was properly assigned to the defendant Mercy L. Wood, the conveyance to her of the equity of redemption was not in execution of the trust. The effect of the sale for non-payment of taxes upon this title need not be considered, as the conveyance of the tax title to the defendant Caroline A. Wood before the period of redemption expired, the master apparently finds, was only to protect the outstanding mortgages, which would have been extinguished if the tax title had been permitted to ripen. *Abbott* v. *Frost,* 185 Mass. 398. By the foreclosure of the second mortgage James A. Wood therefore acquired title to the equity of redemption, and, Caroline A. Wood not having retained any adverse interest, the bill as to her must be dismissed with costs. It is sufficiently plain that by reason of the

trust there was no merger of the respective titles in James A. Wood, when having acquired the equity he succeeded to the rights of the first mortgagee by inheritance. *Evans* v. *Kimball,* 1 Allen, 240. The master's report contains no reference to the circumstances under which the estate acquired by the foreclosure was deeded by him to Mercy, whose rights if this deed is set aside to have the first mortgage which has not been paid decreed to be an existing incumbrance notwithstanding the discharge by James A. Wood as administrator, can be fully protected in the adjustment in the Superior Court of the equities between the parties. *Crosby* v. *Taylor,* 15 Gray, 64. *Tucker* v. *Crowley,* 127 Mass. 400, 401. It will be incumbent on that court to ascertain the circumstances and to determine whether she holds the estate otherwise than in mortgage, by a title which is valid against the plaintiff. *Lerow* v. *Wilmarth,* 9 Allen, 382, 386. *Draper* v. *Buggee,* 133 Mass. 258, 262.

*Decree in each case accordingly.*