CHARLES E. STRATTON & another, assignees, *vs.* FRANCIS M. EDWARDS & others.

Suffolk. March 21, 1899. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Insolvent Debtor — Declaration of Trust — Husband and Wife — Validity of Conveyance as to Creditors — Declarations as to Title — Estoppel.*

A husband conveyed to his wife without consideration the dwelling-house in which they lived and subsequently a store, and at the time of the last conveyance she wrote and signed a statement that he " transferred a mortgage to me, also the store . . . he deeded to me, both to be held in trust for him by me just the same as I hold this house we are now living in, to be held for him in trust by me. He can sell it or do just the same with it as before, as it is his just the same." This statement was taken by him and placed with other papers in a deposit vault box, to which both had access. She also wrote to her mother that " yesterday he deeded the store to me to hold in trust for him, only it does not make it any the more mine than it did before, you understand, for he can take it back or sell it at his pleasure same as before. . . . In fact, it is just the same as he holds the house, only deeded to me to hold for him." *Held,* that these statements in the two writings constituted a valid and sufficient declaration of trust on the part of the wife.

In view of a finding that, at the time when a husband conveyed real estate to his wife without consideration, if he "could have realized a fair market value on the stocks which were then being carried for him, he could have paid his debts in full, without resorting to or realizing upon the said real estate, although in fact he did not so realize upon them," it cannot be said that the conveyance was invalid as regarded existing creditors, or in fraud of the insolvent laws.

A finding that, at the time when a husband conveyed real estate to his wife without consideration, "he had been losing heavily and was troubled over his financial affairs, and that these conveyances were made by him with the actual purpose and intention of putting said real estate beyond the hazards and risks of the said business in which he was engaged, and to protect it from future creditors and to secure it for the benefit of himself, and that thereafter he continued in said business until all his property, except such interest, if any, as he had in said parcels of real estate, had been lost," does not require or warrant the conclusion that the conveyances were fraudulent and void as to future creditors.

To establish a fraudulent intent in a conveyance without consideration by a husband to his wife, it is not enough to show that he had a general purpose to secure the property from the hazards of future business and the claims of future creditors, but it must appear that at the time of the conveyance he had an actual intent to contract debts and a purpose to avoid the payment of them by the conveyance.

Declarations made by a wife, as to her title to property which has been conveyed to her by her husband, in his absence and without his knowledge or authority, cannot bind him.

The facts that a husband, who had conveyed real estate to his wife without consideration, stated orally to two persons, one of whom was a creditor of hers and the other a tenant of the estate under a lease from her, that he had given the property to her, but made no reference to any trust, and that afterwards, when learning from her the extent of his wife's indebtedness, acting under the advice of his counsel, he requested her to convey the estate to a third person, and no reference was made by him at this time to any declaration of trust by her, will not estop him, upon a bill in equity by the assignee in insolvency of his wife's estate to recover the real estate, from setting up his right to the property under a trust.

BILL IN EQUITY, filed in the Superior Court, by the assignees in insolvency of the estate of Caroline G. Mussey to recover certain real estate in Boston alleged to have been conveyed by her in fraud of her creditors to the defendant Edwards. Hearing before *Richardson*, J., who reported the case for the determination of this court. The facts appear in the opinion.

*J. Willard & E. A. Bayley*, for the plaintiffs.

*W. B. French*, (*C. H. Tyler* with him,) for the defendants.

MORTON, J. The conveyance in question was made about a month before Caroline G. Mussey was adjudged insolvent on her own petition, and at a time when she was owing more than she could pay. Subsequent to the filing of the bill Edward W.

Mussey, husband of said Caroline, was admitted as a party defendant, and filed an answer. The case was heard by a justice of the Superior Court, and comes here on his report of the facts and of his findings. There was no decree.

The questions are, first, whether the property which the said Caroline conveyed was held by her upon a valid trust for her husband, and, second, whether if there was an element of trust in her holding of the property this court will uphold and enforce the trust as against her creditors. It appears that the property in question originally belonged to the husband, and consists of two parcels of real estate. The first is a dwelling-house and lot on Warren Avenue, Boston, occupied by Mr. and Mrs. Mussey as a home, and was conveyed by him to her through a third party, without consideration, in 1883. The second is a store on Cornhill, and was conveyed to her in the same manner, without consideration, in 1890. The legal title to both parcels remained in her till the conveyance which is the subject of this suit.

The presiding justice found that " at the time of this conveyance [of the Cornhill property] and in accordance with certain oral statements made by him [Mr. Mussey] to Mrs. Mussey, she wrote in pencil a statement in the nature of a declaration of trust, which on December 6, 1890, she copied in ink and signed with her own hand." This statement, as the presiding justice also found, was taken by Mr. Mussey, and " had since remained with other papers in the deposit vault box, to which he and Mrs. Mussey had access." The material part of this declaration is as follows : " 145 Warren Ave., Boston, Mass., December 6th, 1890. December 3d, 1890, Ned [Mr. Mussey] transferred a mortgage to me, also the store in Cornhill he deeded to me, both to be held in trust for him by me just the same as I hold this house we are now living in, to be held for him in trust by me. He can sell it or do just the same with it as before, as it is his just the same." Then follow statements that it [the memorandum] was made at his request, as he was not satisfied with the pencil memorandum, and that she was going to ask him to put it in the box at the safety vault, and that in deference to his request " to write it on something I could always find it," she had written it on something that she should always keep. The presiding justice also found that Mrs. Mussey sent to her mother a letter, of

which the material portion is as follows: "Boston, Dec. 4th, 1890. . . . Yesterday he [Mr. Mussey] deeded the store in Cornhill to me to hold in trust for him, only it does not make it any the more mine than it did before, you understand, for he can take it back or sell it at his pleasure same as before. . . . In fact, it is just the same as he holds the house, only deeded to me to hold for him." We think that these statements in the writing under date of December 6, 1890, and in the letter of December 4, 1890, constitute a valid and sufficient declaration of trust on the part of Mrs. Mussey. *Arms* v. *Ashley*, 4 Pick. 71. *Montague* v. *Hayes*, 10 Gray, 609. *Barrell* v. *Joy*, 16 Mass. 221. *Urann* v. *Coates*, 109 Mass. 581. *Faxon* v. *Folvey*, 110 Mass. 392. *Kendrick* v. *Ray*, 173 Mass. 305. *Gardner* v. *Rowe*, 5 Russ. 258.

The plaintiffs contend, however, that the conveyances were made by Mussey with intent to defraud his creditors, that the trust was unlawful in its creation, and that a court of equity will not lend its aid to uphold or enforce it. There are several answers to this contention. In the first place, the presiding justice has not found, and we do not think that it follows from the facts that he has found, that the conveyances made by Mussey constituted a fraud upon the insolvent laws or upon his creditors, or that Mussey had reasonable cause to believe himself insolvent when the conveyances were made. On the contrary, in regard to the last proposition the presiding justice found that at the time of each conveyance if Mussey "could have realized a fair market value on the stocks which were then being carried for him, he could have paid his debts in full, without resorting to or realizing upon the said real estate, although in fact he did not so realize upon them." So far, therefore, as existing creditors were concerned he well may have supposed himself at the time of each conveyance to be solvent, and may have been in fact solvent. At any rate, in view of this finding, it cannot be said that the conveyances were invalid as regarded existing creditors, or in fraud of the insolvent laws. *Bridges* v. *Miles*, 152 Mass. 249. *Mundo* v. *Shepard*, 166 Mass. 323. *Jaquith* v. *Massachusetts Baptist Convention*, 172 Mass. 439. The presiding justice further found that at the time of both of the conveyances "he [Mussey] had been losing heavily and was troubled over his financial affairs,

and that these conveyances were made by him with the actual purpose and intention of putting said real estate beyond the hazards and risks of the said business in which he was engaged, and to protect it from future creditors, and to secure it for the benefit of himself, and that thereafter he continued in said business until all his property, except such interest, if any, as he had in said parcels of real estate, had been lost." But this finding does not require or warrant the conclusion that the conveyances were fraudulent and void as to future creditors. In order to have that effect it must appear that the conveyances were made with "an intent on the part of the grantor to contract debts, and a design to avoid payment of such debts by the conveyance of his property," (*Winchester* v. *Charter*, 12 Allen, 606, 611,) and to establish such an intent it is not enough to show that the grantor had a general purpose to secure the property from the hazards of future business and the claims of future creditors. But it must appear that at the time of the conveyance he had an actual intent to contract debts, and a purpose to avoid the payment of them by the conveyance. As already observed, there is nothing in this case which requires or warrants such a conclusion from the finding of the court. *Winchester* v. *Charter* and *Jaquith* v. *Massachusetts Baptist Convention, ubi supra.*

But, further, this proceeding has been instituted on behalf of creditors of Mrs. Mussey, not on behalf of creditors of her husband. It does not appear that he has any creditors, or that, if he has, they are dissatisfied with what has been done. It is well settled that conveyances in fraud of creditors are good as between the parties to them, and, except as to creditors, will be upheld. *Stillings* v. *Turner*, 153 Mass. 534. *Pierce* v. *Le Monier*, 172 Mass. 508.

In making the conveyance which she did at her husband's request, Mrs. Mussey was only carrying into effect the trust upon which she held the property, and we do not see how her creditors have any just ground of complaint. It is conceded that her assignees can take no better title than she had, and, as we understand it, that her creditors have no right to the property if it was lawfully held by her in trust for her husband.

Declarations made by her as to her title, in his absence and without his knowledge or authority, cannot bind him, and we dis-

cover nothing in his conduct which can operate by way of estoppel to prevent him from setting up his right to the property.*

The result is that we think that the bill should be dismissed.

*So ordered.*

---

* The report recited that on various occasions Mrs. Mussey, when borrowing money, stated to different persons that she was the absolute owner of both pieces of the real estate in question, that her husband had given this real estate, and that he could not get it back if he wanted to, but that it did not appear that any of these statements came to his knowledge; that Mussey stated orally to two different persons, one of whom was then a creditor of Mrs. Mussey and the other a tenant of the Warren Avenue property under a lease from her, that he had given both parcels of real estate to her, but made no reference to any trust; and that afterwards, when learning from her the extent of his wife's indebtedness, acting under the advice of his counsel, he requested her to convey the real estate to the defendant Edwards, and no reference was made by Mussey at this time to the declaration of trust on her part.