CORA B. NEAL, Appellant, v. WILLIAM P. BRYANT.

Division One, December 19, 1921.

1. **DECLARATION OF TRUST: In Real Estate: Creation and Existence: Writing.** The Statute of Frauds (Sec. 2263, R. S. 1919) does not require trusts or confidences in land to be created by an instrument in writing, but merely requires that they "shall be manifested and proved by some writing signed by the party who is, or shall be by law, enabled to declare such trust." Where the existence of the trust merely, and not its creation, is sought to be shown, it is not necessary to produce an instrument framed for the purpose of acknowledging the trust; it is fully sufficient if the recognition or admission of it is incidentally made in a letter, pleading or other writing signed by the party to be charged.

2. ———: ———: **Necessary Words.** It is not necessary that the writing acknowledging the existence of a trust in land use the word "trust" or "trustee" or their equivalents.

291 Mo.—6

Neal v. Bryant.

3. ——: ——: **Explained by Facts.** The writing by which the owner of the legal title of land recognizes or admits the existence of a trust or confidence therein in favor of another may, like any other, when that is necessary to a true understanding of its meaning, be read in the light of all the facts and circumstances attendant upon its making and which would be presumed to be in the mind of the writer at the time he issued it.

4. ——: ——: **Gift to Daughter: Devised by Will.** Where a father built a house on a ten-acre tract of land and put her and her family in possession and permitted her to use it as her own, and afterwards made his will, by which he devised to a son "all the real estate I may die seized of, which I have not disposed of during my lifetime and in this will," and about six months thereafter he bought from Leazenby a tract of 32.67 acres adjoining said ten-acre tract and placed said daughter in possession, and she fenced it, rented a part of it and pastured her cows on the rest, collected the rents and treated it in all respects as her own for the remaining year of his life, and shortly before his death he wrote her a note in which he said, "I have given you the Leazenby land, and it is yours forever for your own personal benefit," the writing was a recognition and admission by him of the existence of an executed trust in the said 32.67 acres in her favor, and said land was not devised to his son by the will previously made, but is held to have been a prior gift to said daughter. By said writing the father declared by necessary implication that he held the legal title in trust for her, and although all the devises of real estate to his children were for their respective lives, with remainders over to their children, the language of the writing is so clear and unequivocal that there can be no question that his intention was to give her the fee in this particular tract.

5. ——: ——: **Voluntary Gift.** Where the writing manifested and proved a complete and executed trust, leaving nothing to be done to complete it, it is of no consequence that it was voluntary.

6. ——: ——: **Legal Title: Statute of Uses.** Where a father had invested his daughter with the entire beneficial interest in a certain tract of land, and thereafter in writing declared in effect that he held the legal title in trust for her, the title under the Statute of Uses passed to her, and the land could not be devised by his will to a son.

Appeal from Harrison Circuit Court.—*Hon. L. B. Woods*, Judge.

REVERSED (*with directions*).

*Frisby & Frisby* for appellant; *Geo. W. Wanamaker* of counsel.

(1) A trust relation existed between Joseph F. Bryant, Sr., the common source of title, and Cora B. Neal. R. S. 1909, sec. 2268. It is manifested and proven by a writing signed by the party enabled to declare the trust. (2) A trust is a relation between two persons by virtue of which one of them holds property for the benefit of the other. Corby v. Corby, 85 Mo. 388; Shelton v. Harrison, 182 Mo. App. 414; Perry on Trusts (4 Ed.) sec. 13. It is an equitable right, title or interest in property distinct from the legal owner thereof. Story's Eq. Juris. (8 Ed.), Redfield, sec. 964; Shelton v. Harrison, 182 Mo. App. 414. (3) The things indispensible to a trust, are here, first, sufficient words to create it; second, a definite subject; and third, a definite object. 2 Story's Eq. Juris., sec. 964; 39 Cyc. 17; Pitts v. Weakly, 155 Mo. 135; In re Soulard's Est., 141 Mo. 664. (4) No special form of words is necessary to create a trust. The words "trust" and "trustee" need not be mentioned. Heil v. Heil, 184 Mo. 676; In re Soulard's Estate, 141 Mo. 664; Perry on Trusts, sec. 82; Story's Equity Jurisprudence, sec. 972; Harris Banking Co. v. Miller, 190 Mo. 640; Zeideman v. Molasky, 118 Mo. App. 106; Moulden v. Train, 199 Mo. App. 500. (5) The trust or confidence is a thing distinct from legal property or legal right to property. Perry on Trusts, sec. 13; Story's Eq. Juris., sec. 968; 39 Cyc. 18. (6) Joseph F. Bryant, Sr., constituted himself a trustee for appellant. Perry on Trusts, secs. 13, 38; Story's Equity Juris., secs. 976, 1059; Northrip v. Burge, 255 Mo. 654; Maize v. Bank, 60 Mo. App. 364; Wallace v. Wainright, 87 Pa. St. 263; Tygard v. McComb, 54 Mo. App. 85; Martin v. Funk, 75 N. Y. 134; Dickerson's Appeal, 115 Pa. St. 198; Meussman v. Zellar, 108 Mo. App. 348. (7) The declaration of trust is manifested and proven by a writing signed by the party enabled to declare the trust. Ferguson v. Robinson, 258 Mo. 159; Stevens v. Fitzpatrick, 218 Mo. 723; Pitts v. Weakley, 155 Mo. 133; 39 Cyc. 44; Story's Eq. Juris.,

sec. 980; R. S. 1909, sec. 2868. (8) In jurisdiction where the above statute is in the form in which Missouri has adopted it—that is "manifested and proved" by some writing, the rule of construction adopted is that the trust need not be created by writing, but its existence must be evidenced by some writing. 39 Cyc. 44; Perry on Trusts, sec. 97; Story's Eq. Juris., sec. 972; Lane v. Ewing, 31 Mo. 86; Cornelius v. Smith, 55 Mo. 528; Mulock v. Mulock, 156 Mo. 438; Crawley v. Crafton, 193 Mo. 431; Woodward v. Stephens, 51 Mo. 448; Stevenson v. Haynes, 220 Mo. 210; Heil v. Heil, 184 Mo. 675; Hall v. Bank, 145 Mo. 430; Pitts v. Weakley, 155 Mo. 133; Ferguson v. Robinson, 258 Mo. 132; Matthews v. an Cleave, 282 Mo. 32; Kerens v. St. Louis Union Tr. Co., 223 S. W. 645. (9) There being written evidence of the existence of the trust, parol evidence is admissible to explain the position of the parties. Perry on Trusts, sec. 79; Hutsell v. Crewse, 138 Mo. 5; Watson v. Payne, 143 Mo. App. 721; Kerens v. St. Louis Union Tr. Co., 282 Mo. 32; In re Soulard's Estate, 141 Mo. 642; Harris Banking Co. v. Miller, 190 Mo. 640. Parol evidence is admissible to explain what was meant by "the Leazenby land." Settles v. Scott, 211 S. W. 35. (10) The entire equitable interest was parted with. Lane v. Ewing, 31 Mo. 97; Hohlman v. Hohlman, 183 S. W. 623; Knapp v. Publishers, 127 Mo. 77; Bank v. McKinna, 168 Mo. App. 254. (11) A voluntary trust, if executed, will be enforced. This is an executed trust. Its scope and limitations are fully and completely declared. Nothing is left to be done to fix the matter of trust. 39 Cyc. 28, 29, 72; Story's Equity Jurisprudence (8 Ed.) sec. 973; Ewing v. Lane, 31 Mo. 725; Perry on Trusts, secs. 98, 109, 359; Hutsell v. Crewse, 138 Mo. 5; Watson v. Payne, 143 Mo. App. 728; Lane v. Ewing, 31 Mo. 84, 85, 86, 87; Mize v. Bates County Bank, 60 Mo. App. 363; Taylor v. Welch, 168 Mo. App. 234; Northrip v. Burge, 225 Mo. 650; Leeper v. Taylor, 111 Mo. 324; Harris Banking Co. v. Miller, 190 Mo. 672; In re Soulard's Estate, 141 Mo. 664; Harding v. St. Louis, 276 Mo. 136; Freeman v. Maxwell, 262 Mo. 13. (12) The writing sufficiently manifests and proves the trust. Its

language is plain. It is not too indefinite, vague or un-
certain to be carried into effect. Neither is it a promise
to do, nor a mere admission in writing of a promise to do.
It definitely declares that he has given her, his child, the
land—that it is hers forever for her use and benefit.
All the elements to constitute a trust being present ex-
cept the naming of a trustee, he thereby constitutes him-
self a trustee for her. There is nothing left to be done
about the matter of the trust. It is a passive, dry, sim-
ple trust, completely and perfectly declared. There has
been no revocation, since the will bears date July 9, 1915.
It was not revocable. (13.) A failure to put the dec-
laration of trust in writing does not prevent a trust from
resulting by operation of law. Condit v. Maxwell, 142
Mo. 275; Mulock v. Mulock, 156 Mo. 438; Shelton v.
Harrison, 182 Mo. App. 417; Wolfskill v. Wells, 154 Mo.
App. 304.


*A. S. Cumming* for respondent.


(1) A voluntary or express trust must be manifested
and proved by some writing signed by the party creat-
ing it, and from such writing the court must be able to
determine the existence, terms and limits of the trust.
Ferguson v. Robinson, 258 Mo. 134; Dyer's Appeal, 107
Pa. St. 454. (2) An express trust in real estate must
be proved by writing. Constructive trust may be proved
by parol. Although the nature of the evidence may
differ, the facts to be proved are alike in both cases, and
the evidence must be so clear and unequivocal as to
leave no room for a doubt in the mind of the chancellor
as to the existence of the trust. Ferguson v. Robinson,
258 Mo. 134. (3) A constructive trust is raised by
operation of law for the purpose of circumventing fraud.
1 Beach, Mod. Eq. Jurisp., sec. 226; Wolfskill v. Wells,
154 Mo. App. 304. (4) Four things must concur to raise
a voluntary trust: Sufficient words to create it, a definite
object, a definite subject, the terms of the trust must be
sufficiently declared. Pitts v. Weakley, 155 Mo. 135. (5)
A thrust can be enforced upon evidence so clear, full

and demonstrative as to banish any reasonable doubt from the mind of the Chancellor as to the existence of every element essential to the establishment of a complete trust. Northrip v. Burge, 255 Mo. 668; Reed v. Sperry, 193 Mo. 173; Harding v. Trust Co., 276 Mo. 142; Smith v. Smith, 201 Mo. 547; Curd v. Brown, 148 Mo. 92. (6) An imperfect gift will not be converted into a declaration of trust on account of the imperfection. In re Estate of Soulard, 141 Mo. 659; Pitts v. Weakley, 155 Mo. 135; Knapp v. Publishers, 127 Mo. 77. (7) Equity never enforces a mere executory agreement for a trust which is wholly voluntary. Harding v. Trust Co., 276 Mo. 144. (8) If a gift is imperfect in law and for want of consideration can not therefore be enforced, a court of equity will not aid the donee by construing it into a declaration of trust. Flanders v. Blandy, 45 Ohio St., 115. (9) Before the owner can be held as a trustee for a mere volunteer he should declare in unmistakable terms that he meant to stand in a fiduciary relation to the object of his bounty. Flanders v. Blandy, 45 Ohio St. 116.

RAGLAND, C.—This is a statutory action to determine and quiet title to 32.67 acres of land in Harrison County. Joseph F. Bryant, Sr., is the common source of title. Plaintiff claims that said Bryant in his lifetime gave her the land and afterward declared in writing that he held it in trust for her; and that the trust declared, being a dry or passive one, was executed by the statute. Defendant claims under the will of Bryant.

Bryant died testate January 16, 1917, without having made any formal conveyance of the land in controversy to anyone. He had been married twice; plaintiff and two sons were children of the first marriage, and defendant, four other sons and three daughters were the fruits of the second marriage. He was a man of great wealth. He seems to have made a tentative distribution of a part of his estate among his children during his lifetime. His method of making such distribution was to allot to each a particular fund, or security, or parcel of real estate, and turn over the income or rent to the distributee, but re-

tain the legal ownership in himself.  He kept an account with his children in debit and credit form.  He started the account of each with a fixed credit—a tentative distributive share of his estate.  Whenever he determined to increase this amount he entered an additional credit. Against the amounts so credited to each he charged each respectively with the property, real or personal (not the income), set apart for his benefit.  In two instances he seems to have made changes in the provisional allotment of real estate.  This he did by crediting with such property the account of the child for whom it had previously been set apart, and then charging it to that of another. His last will was executed July 9, 1915.  The accounts with his children show no entries of a date subsequent to that.

By his will, Bryant confirmed the tentative partial distribution of his property made in his lifetime, and made complete disposition of the remainder.  With one exception, all devises of real estate to his children were for life only, with remainders, in most instances, to the heirs of the body of the life tenant.  The exception just noted is contained in paragraph "17th" of the will, which reads in part as follows:

"I also give and bequeath to my son, William P. Bryant, all the real estate I may die seized of, wherever situated, which I have not disposed of during my life-time and in this will.  To have and to hold the same unto the said William P. Bryant, his heirs and assigns forever."

The several pieces of real estate devised to plaintiff were for life, with remainders to one, or the other, or both of her sons.  Fifteen thousand dollars was placed in the hands of a trustee, who was directed to pay the net income thereof to her during her life and at her death to her children until the youngest became of age, when the trust should terminate and the fund be divided among her children living at that time.

On January 25, 1916—about six months after the execution of his will—Bryant purchased from one Leazenby the land in controversy, paying $500 therefor.

This land was situated in the immediate vicinity of the little city of Bethany, and lay adjoining a tract of about ten acres upon which plaintiff and her family were at that time residing. Whether she had title to the ten-acre tract, or whether she had merely been put in possession of it by her father under the plan of distribution heretofore described, the evidence does not show. It seems that he at least had had the residence built on it for her. In any event, as soon as the Leazenby land had been bought he immediately put plaintiff in possession of it. He himself never exercised any acts of ownership over it; on the contrary he expressly denied ownership; to a number of people who came to rent or buy portions of it, he said it was not his but Cora's. Ten or twelve acres of the land were in cultivation; the remainder was pasture. Through the agency of her husband, plaintiff rented the plow land for the cropping season of 1916; she pastured her own cows and those of others on the grass land, collected the rents, repaired the fences and in all respects treated the land as her own. In November, 1916, she made a contract with one Bartlett to lease him the plow land for a term of two years; Bartlett, however, insisted on having a lease from Bryant, whom he supposed had the title. Bryant thereupon joined plaintiff in the execution of the lease, which provided among other things that the tenant should till the demised premises under the direction of plaintiff's husband and should deliver to him the part of the crops agreed upon as rent.

In December, 1916, plaintiff wrote her father the following letter:

"Dec. 23, 1916.

"Dear Father:

Can you advance me my rent money for the next month, as I need it for Christmas. I am economical as can be, but can't quite manage.

"Your daughter,

"CORA."

On the back of this letter he replied as follows:

"Dear Cora:

I can't send your rent money now. Try to get along until I collect it. I have given you the Leazenby land, and it is yours forever for your own personal benefit, and I think that is help enough now.

                              "Your father,
                         "JOSEPH F. BRYANT."

As stated Bryant died January 16, 1917. He left no real estate which would pass as a devise to the defendant under paragraph 17th of the will, heretofore set out, unless it was the land in controversy. That land was not mentioned in the accounts the testator kept with his children.

The court found and adjudged that plaintiff had no interest, either legal or equitable, in the land in controversy, but that defendant was the absolute owner thereof, having title thereto in fee simple. From that judgment plaintiff prosecutes this appeal.

There can be no question but that Joseph F. Bryant, Sr., bought the land in controversy for the express purpose of making a further provision for appellant out of his estate, and that he gave it to her in fulfillment of that purpose. She concedes that he never by formal conveyance transferred to her either the legal or equitable title, but contends, that according to a declaration of trust made by him, he had previously thereto invested her with the entire beneficial interest in the land, retaining in himself only the naked legal title which passed to her under the Statute of Uses. The sufficiency of the writing relied upon to establish the existence of the alleged trust is the only question presented for decision.

The Statute of Frauds (Sec. 2263, R. S. 1919) furnishes the sole test of the adequacy of the writing under consideration as a declaration of trust. Our statute following in form the early English statute (29 Car. II, c. 3, sec. 7) does not require trusts or confidences in land to be created by an instrument in writing, but merely that they "shall be manifested and proved by some writing signed by the party who is, or shall be by law, enabled to declare such trust." [Lane v. Ewing, 31

Mo. 75, 86; Ranney v.. Byers, 219 Pa.' 332; 26 R. C. L. 1198.] And where the existence of the trust merely, and not its creation, is sought to be shown, it is not necessary to produce an instrument framed for the purpose of acknowledging the trust; it is fully sufficient, if the recognition or admission of it is incidentally made in a letter, pleading, or other writing, signed by the party to be charged. , [Hall v. Bank, 145 Mo. 418; Kingsbury v. Burnside, 58 Ill. 310, 329.] Nor is any particular form of words required. The words, "trust" or "trustee," or their equivalents are not necessary. It is sufficient if the writing clearly manifests the existence of a trust and what the trust is. [In re Estate of Soulard, 141 Mo. 642, 664; Harris Banking Co. v. Miller, 190 Mo. 640, 670.] And such writing, like any other, may, when essential to a true understanding of its meaning, be read in the light of all the facts and circumstances attendant upon its making, and which would be presumed to have been in the mind of the one who issued it at the time of its issuance.

The writing in this case is a father's response to a daughter's request for further advancements. In it he puts aside her entreaty by reminding her of a provision recently made for her. This is his language: "I have given you the Leazenby land, and it is yours forever for your own personal benefit. I think that is help enough now." The extrinsic evidence shows that she then was, and for nearly a year had been, invested with the possession, control and use of the Leazenby land, and in this writing her father declared that this possession, control and use—the land itself—he had given her; that it was hers forever for her own personal benefit. As he was then the holder of the legal title, he declared in this writing by necessary implication that he held such title in trust for her. Respondent argues that in view of the provisions of the will by which all the devises of real estate to his children were made for their respective lives only, with remainders to other persons, Bryant could not have intended to have given this land to appellant in fee; that in the light of these provisions the conclusion must

be: that while Bryant allowed the appellant the income from the Leazenby land temporarily, and doubtlessly intended to give her some estate in it at some future time, when he had decided just what that estate would be and what disposition he would make of the remainder, yet he died before his purposes and intentions in that respect had sufficiently crystalized for him to execute them. But the language of the writing leaves no doubt as to what estate he had given her. Its language in that respect is not vague and indefinite; it is clear and unequivocal. "It [the Leazenby land] is yours *forever* for your own personal benefit."

The writing we think substantially complied with the requirements of the statute; it manifested the existence of a trust—its subject, its object and its terms. The trust so manifested and proved was an executed trust—nothing remained to be done to complete it. It is of no consequence, therefore that it was voluntary. [Watson v. Payne, 143 Mo. App. 721, 728.]

As Bryant had invested appellant with the entire beneficial interest in the land in controversy, and thereafter declared in effect that he held the legal title in trust for her, that title under the Statute of Uses also passed to her. The land therefore was not devised to the defendant; it had been disposed of during the lifetime of the testator.

The judgment of the circuit court is reversed with directions to that court to enter judgment for plaintiff in accordance with the views herein expressed.

*Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAGLAND, C., is hereby adopted as the opinion of the court. All of the judges concur.