[Civil No. 2408.   Filed April 20, 1926.]

[245 Pac. 360.]

ANGUS CASHION, SIDNEY P. OSBORN, CECIL D. BOYCE, M. M. OSBORN and LEO GOLDMAN, Appellants, v. THE BANK OF ARIZONA, a Corporation, Appellee.

1. TRUSTS.—Express trust concerning interest in real property is within statute of frauds, unless evidenced by writing.

1.  See 26 R. C. L. 1198.

2. TRUSTS—EXPRESS PAROL TRUST TO APPLY RENTS OF LAND TO STATED PURPOSES MAY BE ESTABLISHED BY STATEMENTS OF TRUSTEE CONTAINED IN LETTER.—Express parol trust binding assignee of lease to apply rents to certain purposes may be established by written statements of trustee contained in letter, as to terms and conditions under which assignment was made.

3. TRUSTS.—Evidence *held* sufficient to sustain finding that assignment of lease was accompanied by express oral trust for application of proceeds.

4. TRUSTS.—Trusts of personal property are not within statute of frauds, but may be created and proved by parol.

5. TRUSTS—WHERE ASSIGNMENT OF LEASE WAS ACCOMPANIED BY ORAL TRUST AS TO RENTS, CLAUSE IN ASSIGNMENT THAT ASSIGNEE BE ENTITLED TO ALL BENEFITS ACCRUING TO LESSOR HELD TO INDICATE MERELY RIGHT TO RENTS ACCRUING TO LESSORS, TOGETHER WITH RIGHT TO ENFORCE COLLECTION, AND NOT TO SHOW PURPOSE TO CONVEY EQUITABLE TITLE.—Where parol trust accompanying assignment of lease provided for collection of all rents and their application in particular way, clause, in assignment of lease that assignee be entitled to all benefits accruing under lease *held* to mean no more than that he had right to rents accruing to lessors and to enforce their collection; word "benefits" not showing purpose to convey equitable title.

6. LANDLORD AND TENANT.—Purchaser of assignment of non-negotiable chose in action, such as lease, takes subject to conditions in favor of assignor, though assignment be absolute on its face.

7. BILLS AND NOTES.—To be *bona fide* purchaser of negotiable paper, one must pay valuable consideration, acquire rights without notice of existence of rights of others and act in good faith.

8. LANDLORD AND TENANT—LOAN DEPOSITED TO DEBTOR'S ACCOUNT, BUT NEVER WITHDRAWN BY HIM, HELD NOT VALUABLE CONSIDERATION FOR TRANSFER OF ASSIGNMENT OF LESSOR'S RIGHT TO RENTS, AS COLLATERAL SECURITY. — Where lessor's assignment of rights under lease was accompanied by parol trust to apply proceeds in certain way, one accepting assignment from assignee, as collateral security for loan which was credited to assignee's account, but which was never withdrawn from account, *held* not to have paid valuable consideration for assignment, so as to be purchaser for value.

9. LANDLORD AND TENANT—HOLDER OF NON-NEGOTIABLE ASSIGNMENT OF RIGHTS OF LESSOR AS COLLATERAL SECURITY FOR LOAN, WHICH WAS APPLIED TO PRE-EXISTING INDEBTEDNESS, HELD NOT PURCHASER FOR VALUE.—Where non-negotiable assignment of lessor's rights was given by assignee as collateral security for loan which

2. Creation of trust in personalty by parol, see note in 51 L. R. A. (N. S.) 1208. See, also, 26 R. C. L. 1194.

was deposited to his account, but never withdrawn, application of proceeds of loan to pre-existing indebtedness *held* not to make holder of assignment purchaser for value.

10. EVIDENCE.—Terms of written instrument cannot ordinarily be contradicted or varied by parol testimony.

11. EVIDENCE.—Parol evidence may be admitted to show true consideration, when it is apparent from instrument itself that consideration recited is not real consideration.

12. EVIDENCE.—Where assignment of lessor's rights recited one dollar and other valuable consideration, parol evidence *held* admissible to show what other valuable consideration was.

13. APPEAL AND ERROR—ACCEPTANCE BY ONE OF PLAINTIFFS OF DIVIDEND RESULTING FROM JUDGMENT, WHEREBY HE WAS SUBROGATED TO RIGHTS OF DEFENDANT, IN WHOSE FAVOR JUDGMENT WAS ENTERED, TO CERTAIN EXTENT, HELD NOT TO DEFEAT RIGHT OF HIMSELF OR OTHER PLAINTIFFS TO APPEAL.—In controversy over proceeds of lease under assignment of lessor's rights, accompanied by trust agreement to make payments on first mortgage, taxes, second mortgage, etc., where assignee of second mortgage who had paid taxes and interest on first mortgage, and was one of plaintiffs, was adjudged subrogated to claim of defendant against insolvent bank to extent that such claim would be reduced by proceeds of lease, acceptance by that plaintiff of dividend resulting from such subrogation *held* not to prevent him or other plaintiffs from prosecuting appeal.

See (1–3) 39 **Cyc.**, p. 44, n. 42, p. 46, n. 53, p. 53, n. 85, 87, p. 54, n. 90, 94, p. 85, n. 74.    (4) 39 **Cyc.**, p. 51, n. 75.    (5) 39 **Cyc.**, p. 207, n. 22.    (6) 35 **C. J.**, p. 1219, n. 32 New.    (7, 8) 8 **C. J.**, p. 480, n. 63, p. 495, n. 68, 69, p. 496, n. 75; 35 **C. J.**, p. 1219, n. 32 New.    (9) 35 **C. J.**, p. 1219, n. 32 New; 39 **Cyc.**, p. 567, n. 76, p. 568, n. 77, 79. (10–12) 22 **C. J.**, p. 1098, n. 96, p. 1157, n. 53, p. 1159, n. 55, p. 1160, n. 58.    (13) 3 **C. J.**, p. 680, n. 27.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Richard Lamson, Judge. Judgment reversed.

Messrs. Armstrong, Lewis & Kramer, for Appellants.

10. Admissibility of parol evidence to vary, add to, or alter a written instrument, see note in 17 **L. R. A.** 270. See, also, 10 **R. C. L.** 1016.

Messrs. Favour & Baker, for Appellee.

McALISTER, C. J.—The latter part of 1922, Angus Cashion, Sidney P. Osborn, Cecil D. Boyce, and M. M. Osborn were the owners of about 700 or 800 acres of Maricopa county farm lands upon which were two mortgages, one for $57,000 dated March 1, 1922, to the Federal Farm Land Bank of Berkeley, California, and another for $47,000 dated May 22, 1922, to W. J. Kingsbury. The latter on June 12, 1922, was assigned by Kingsbury to Leo Goldman, who has since been its owner.

On December 27, 1922, the owners of the premises leased them to the Kyrene Farms Company for a term beginning January 1, 1923, and ending January 15, 1924, for a gross rental of $11,000. The lease provides that the lessee should plant at least 600 acres of the land in cotton; that upon the harvesting of the cotton and the delivery of it to the gin one-fourth thereof should be sold and the proceeds applied upon the rent. It further provides that upon the expiration of the lease, "or the sooner termination thereof," the second party should deliver to the owners possession of the premises. Upon the same day, and immediately after executing the lease, the lessors assigned it by the following written instrument to W. J. Kingsbury, who was then president of the Farmers' & Merchants' Bank of Tempe:

"Memorandum of agreement, made and entered into this 27th day of December, 1922, by and between Angus Cashion, S. P. Osborn, Cecil D. Boyce and M. M. Osborn, first parties, and W. J. Kingsbury, second, witnesseth:

"Whereas, the first parties have this day entered into a written lease with the Kyrene Farms Company, a corporation, to a copy of which lease this agreement is attached; and

"Whereas, the second party is desirous of assuming the obligations of and securing the benefits to the first parties therein, and the first parties are willing that he shall so do;

"Now, therefore, for and in consideration of one ($1.00) dollar to them in hand paid by the second party, the receipt whereof is hereby acknowledged, and other valuable consideration, the first parties hereby sell, assign, transfer, set over, and convey unto the second party all their right, title and interest in and to said lease, including the rent to accrue thereunder and the second party accepts the same and agrees to perform according to all of the terms and conditions of said lease to be performed by the first parties, and shall be entitled to all of the benefits to accrue to the first parties thereunder.

"In witness whereof the parties have hereto set their hands the day and year first above written.

"ANGUS CASHION,
"SIDNEY P. OSBORN,
"CECIL D. BOYCE,
"M. M. OSBORN,
"First Parties.
"_____,
"Second Party."

This assignment was delivered to and accepted by Kingsbury, and on June 30, 1923, he assigned the lease to the Bank of Arizona for the purpose of securing the payment of a promissory note for $5,000, which was executed the same day by the Farmers' & Merchants' Bank to the Bank of Arizona, and which recited that the collateral was also security for the payment of "any other liabilities of the undersigned to said holder due or to become due, or that may hereafter be contracted." At that time there was an indebtedness of $20,000 in the form of two certificates of deposit of $10,000 each, due the Bank of Arizona by the Farmers' & Merchants' Bank of Tempe, and the accrued interest upon this had not been paid for many months.

The amount of this note, $5,000, was placed to the credit of the Farmers' & Merchants' Bank on July 6, 1923, on the books of the Bank of Arizona, and so remained until August, 1923, when by cross-entry on its books the bank applied it to the payment of the accrued interest and, as far as it would go, on the principal of the $20,000 loan mentioned above. No part of it was ever paid to the Farmers' & Merchants' Bank or to anyone else upon its order, nor did the latter ever check on it or in any way use it.

As soon as the owners learned that Kingsbury had assigned the lease to the Bank of Arizona, they and Leo Goldman, the owner of the second mortgage, notified that bank, the Kyrene Farms Company, and the receiver of the Farmers' & Merchants' Bank, which had in the meantime become insolvent and suspended business, that they made the assignment to Kingsbury, and he accepted it upon and in consideration of his oral agreement to hold the lease upon the following express trust, to wit: That he would collect the rentals due thereunder and pay them out as follows: First, the amount due or to become due in 1923 on the mortgages of the Federal Farm Land Bank; second, the amount due on the premises for state and county taxes; and, third, the amount due or to become due in 1923 on the second mortgage then held by Leo Goldman. The Bank of Arizona thereupon asserted its ownership in the lease and the amount due thereunder. It took the position that Kingsbury had not accepted the assignment in trust, and that neither the owners nor Leo Goldman had any right to have the proceeds of the lease applied in accordance with the alleged oral trust.

The owners and Leo Goldman thereupon filed suit against the Bank of Arizona and others for the pur-

pose of having it judicially declared that Kingsbury took the assignment of the lease as trustee of an express trust, and that they were entitled to have the trust executed in accordance with its terms. The answer of the bank including its cross-complaint is in line with the position it took upon being apprised by the owners and Goldman of their claim that the assignment was in trust and not absolute. The court sitting without a jury heard the case, and from the findings it made held that the Bank of Arizona was entitled to the rents, the net amount of which was $7,335.39, with interest. From this ruling the plaintiffs have appealed to this court.

There are eight assignments of error, but the first seven deal with the sufficiency of the findings to sustain the judgment and are argued together, while the eighth concerns the question of interest on the amount allowed from the date of the decree.

It appears from the findings that prior to the execution of the written assignment the plaintiffs, or some of them other than Leo Goldman and Kingsbury, had a conversation, in which they orally agreed that the latter should collect from the Kyrene Farms Company the rental due under the lease and pay it out as follows:

"First, to the payment of principal and interest then due or to become due, during 1923, on the said Federal Farm Land Bank mortgage; second, to the payment of state and county taxes on the leased premises; third, to the payment of the principal and accrued interest then due or to become due during 1923 on the several promissory notes executed by Angus Cashion and wife to W. J. Kingsbury, and now owned by the plaintiff Leo Goldman, and the defendants Farmers' & Merchants' Bank, and A. T. Hammons, as superintendent of banks of the state of Arizona."

This is a finding that an express trust was created, but appellee has made cross-assignments of error, and in them attacks the sufficiency of the evidence to support it. The contention is that the trust found to exist concerns an interest in real property, and for this reason must be evidenced by a writing signed by the proper parties, since trusts of this character come within the statute of frauds and cannot be proven by parol. If the trust be one relating to an interest in land and there is nothing other than oral testimony to establish it, this view is correct; but the record discloses that it is not supported by oral testimony alone. It appears therein not merely that three witnesses testified to the oral agreement, but that some time after the assignment Kingsbury wrote a letter to one of the owners of the land and signed it, in which he stated the terms and conditions under which the lease was assigned to him, and these were the same as those sworn to by the three witnesses and found by the court. And this, we think, is sufficient to prove the trust, even though it be one affecting real property, for the authorities are agreed that an express trust in lands may be created by parol, though it cannot be proved that way but may be established by the written declaration of the trustee to whom the land is conveyed. "In this country," says 26 R. C. L. 1198, "as a rule, the statutes do not require a trust in land to be created by a writing but merely that it shall be manifested or proved by a writing, so that the conveyance to the trustee need not declare the trust, the existence of which may precede the making of the writing by which alone it can be established. Therefore any declaration in a letter, pleading or other writing, made by the grantee or assignee of property, at any time after the convey-

ance, is competent proof that the property was to be held in trust according to the terms of such declaration.'' Note to *Holmes* v. *Holmes et al.*, Ann. Cas. 1913B 1021, 1023; *Ranney* v. *Byers*, 219 Pa. 332, 123 Am. St. Rep. 660, 68 Atl. 971; *Insurance Co. of Tennessee* v. *Waller*, 116 Tenn. 1, 115 Am. St. Rep. 763, and note at page 774, 7 Ann. Cas. 1078, 95 S. W. 811; *Wiggs* v. *Winn*, 127 Ala. 621, 29 South. 96; *McArthur* v. *Gordon*, 126 N. Y. 597, 12 L. R. A. 667, 27 N. E. 1033; *Kingsbury* v. *Burnside*, 58 Ill. 310, 11 Am. Rep. 67; *Renz* v. *Stoll*, 94 Mich. 377, 34 Am. St. Rep. 358, 54 N. W. 276; *Stratton et al.* v. *Edwards et al.*, 174 Mass. 374, 54 N. E. 886; *Ellison et al.* v. *Ganiard*, 167 Ind. 471, 79 N. E. 450; *Hall et al.* v. *Farmers' & Merchants' Bank et al.*, 145 Mo. 418, 46 S. W. 1000; *Neal* v. *Bryant*, 291 Mo. 81, 235 S. W. 1075; *Aller* v. *Crouter et al.*, 64 N. J. Eq. 381, 54 Atl. 426. In 1 Perry on Trusts and Trustees, sixth edition, paragraph 82, we find this language:

''There is no particular formality required or necessary in the creation of a trust. All that is required is written evidence supplying every essential detail of the trust. . . . The statute of frauds will be satisfied if the trust can be manifested or proved by any subsequent acknowledgment by the trustee, as by an express declaration, or any memorandum to that effect, or by a letter under his hand, or by his answer in chancery, or by his affidavit, or by a recital in a bond or deed, or by a pamphlet written by the trustees, or by an entry in a bank-deposit book; in short, by any writing in which the fiduciary relation between the parties and its terms can be clearly read.''

That a letter written by the trustee acknowledging he holds the land in trust is sufficient evidence of the trust, see, also, *Mosher et al.* v. *Funk et al.*, 194 Ill. 351, 62 N. E. 782; *Nesbitt* v. *Stevens*, 161 Ind. 519, 69 N. E. 256; *Nolan* v. *Garrison*, 151 Mich. 138, 115

N. W. 58; *Hutchins* v. *Van Vechten*, 140 N. Y. 115, 35 N. E. 446; and note in Ann. Cas. 1913B 1026.

If, upon the other hand, the thing assigned be considered personal property, and we are rather of the opinion that it is *(Yeiser* v. *Jetter et al.*, 86 Neb. 352, 125 N. W. 632), the same result is reached, for "the great weight of authority," according to 26 R. C. L. 1194, "is to the effect that the statute of frauds does not extend to trusts of personal property, and that such trusts may be created and proved by parol." Out of the mass of authority on this proposition, see the following: 39 Cyc. 51; 1 Perry on Trusts and Trustees, 6th ed., par. 86; *Ransdel et al.* v. *Moore et al.*, 153 Ind. 393, 53 L. R. A. 753, 53 N. E. 767; *Coyne et al.* v. *Supreme Conclave of Improved Order of Heptasophs et al.*, 106 Md. 54, 14 Ann. Cas. 870, 66 Atl. 704; *Harris Banking Co.* v. *Miller*, 190 Mo. 640, 1 L. R. A. (N. S.) 790, 89 S. W. 629; note, 34 Am. St. Rep. 195.

It is contended, however, that the equitable as well as the legal interest in the lease was assigned to Kingsbury, and that both titles being merged in the same person, a trust could not be created. This construction of the assignment results, it is claimed, from the use therein of the word "benefits"; but we are unable to see wherein this makes any difference. Kingsbury undoubtedly took what was assigned to him, namely, the right, title and interest of the lessors under the lease, and while these words, when used to define the interest conveyed, usually imply complete title, both legal and equitable, yet as here used they mean merely the rents accruing to the lessors together with the right to enforce their collection (16 R. C. L. 637), and the clause, "he shall be entitled to all of the benefits accruing to them under the lease,"

signifies the same thing, and consequently adds nothing to their meaning. They, just as much as it, indicate the extent of the interest assigned, and the word ''benefits'' was used in the same sense; the intention being, as we see it, that it should have no wider significance. It did not any more than they show that the purpose was to convey the equitable title, nor prevent appellants from showing that the assignment, though absolute on its face, was in fact only in trust.

We are therefore clearly of the view that the evidence supports the finding of an express trust, and that appellee's cross-assignment that there was no competent testimony to establish an enforceable trust is not well founded.

It being established that Kingsbury, the original assignee, took the lease from the owners with the explicit understanding that he would merely collect the rent and pay it out for certain, specific purposes, could he ignore this trust, assign the lease to a third party, and give a better title than he himself had? The lease was a non-negotiable chose in action, and the rights of an assignee of such an instrument are not determined by the rules governing the rights of a holder by assignment of one that is negotiable or even semi-negotiable. A person to whom an instrument of the former class has been assigned, upon condition or subject to some claim in favor of the assignor, although the writing evidencing the assignment be absolute on its face, cannot convey a better title than he himself has, and one to whom he assigns it takes it subject to all the equities of the original holder. This principle is announced in the following language in Pomeroy's Equity Jurisprudence, volume 2, paragraph 709:

"If the owner and holder of a thing in action not negotiable transfers it to an assignee upon condition, or subject to any reservations or claims in favor of the assignor, although the instrument of assignment be absolute on its face, this immediate assignee, holding a qualified and limited interest, cannot convey a greater property than he himself holds; and if he assumes to convey it to a second assignee by a transfer absolute in form, and for a full consideration, and without any notice to such purchaser of a defect in the title, this second assignee takes it, nevertheless, subject to all the equities, claims, and rights of the original holder and first assignor."

And in a recent case in California, *Popp* v. *Exchange Bank,* 189 Cal. 296, 208 Pac. 113, a husband and wife had executed a promissory note to a bank to cover an overdraft and as security therefor put up three bonds of the A. E. Power Corporation, which were the property of their minor children, a fact unknown to the bank, and in holding that title did not pass because the bonds were non-negotiable, the court used this language:

"The result is that the defendant cannot protect itself upon the rule, applying to negotiable instruments only, that where the holder thereof has by delivering the instrument to a third person clothed him with an apparent title thereto, and such third person disposes of it to an innocent purchaser, such purchaser obtains title as against the true owner, although the person to whom it was delivered had no authority to make a sale thereof. *Chase* v. *Whitmore,* 68 Cal. 547, 9 Pac. 942. It may be possible that as the owners of these bonds were minors, it could not be said that they had clothed their parents with apparent authority to dispose of the bonds, even if they were negotiable. But that question we need not determine, for, as the bonds were not negotiable, the rule cannot apply in any event to this case. The rule applicable here is that the seller of property can

transfer to the buyer no better title than he has himself, and if at the time of the transfer he had no title, the purchaser, although buying in good faith, and for full value, obtains no title. *Crocker Nat. Bank* v. *Byrne,* 178 Cal. 332, 173 Pac. 752.''

It is contended, however, that even though the assignment to Kingsbury was in trust and enforceable as between him and the assignors, yet the bank was a purchaser in good faith for a valuable consideration without notice of the trust and as such entitled to protection in a court of equity. This is true, it is argued, because there was nothing, either actual or constructive, to advise appellee that Kingsbury's title to the lease was limited; the assignment being absolute upon its face and the equities of the assignors latent. To constitute one a *bona fide* purchaser of negotiable paper, he must, in consummating the transaction, have done three things: First, paid a valuable consideration; second, acquired his rights without notice of the existence of the rights of others; third, acted in good faith. If any one of these three elements is absent, the purchase was not *bona fide,* and it is the claim of appellants in this case that the first of these is missing; that is, that appellee paid no consideration for the lease, because no part of the $5,000 credit given the Farmers' & Merchants' Bank by appellee was ever checked against or withdrawn, the full sum remaining intact until some time in August, 1923, when appellee, by cross-entry, applied it to the payment of the interest and upon the principal of the $20,000 loan. This contention we think correct, because no consideration for the note or its security passed from appellee to the Farmers' & Merchants' Bank. Merely giving the latter credit on its deposit account was in effect an agreement by appellee to pay it that amount when demanded by check or other

order, and so long as the credit was not withdrawn the bank had parted with nothing and was in a position to protect itself by canceling the credit and returning the note to the depositor. *Curry* v. *Wisconsin Nat. Bank,* 149 Wis. 413, 136 N. W. 549; *City Deposit Bank Co.* v. *Green* (Iowa), 103 N. W. 96; *Union National Bank* v. *Winsor,* 101 Minn. 470, 118 Am. St. Rep. 641, 11 Ann. Cas. 204, 112 N. W. 999; *Citizens' State Bank* v. *Cowles,* 180 N. Y. 346, 105 Am. St. Rep. 765, 73 N. E. 33; *State of Oklahoma* v. *Emery,* 73 Okl. 36, 6 A. L. R. 234, 174 Pac. 770; *Marion National Bank* v. *Harden,* 83 W. Va. 119, 6 A. L. R. 240, 97 S. E. 600. "Almost without exception," says a note in 6 A. L. R. 255, "the courts in this country have held that a bank is not a holder in due course of a negotiable instrument in its possession if it has given nothing of value therefor further than a credit as a deposit to the former holder, while it has not honored his checks against the deposit, or in any way bound itself absolutely to account to someone for the amount of the deposit."

Neither did the fact that the $5,000 was applied upon the payment of the $20,000 pre-existing indebtedness of the Farmers' & Merchants' Bank to the appellee make the latter a purchaser for value. It would have had this effect, perhaps, if the instrument assigned had been negotiable; but such a rule was intended to promote the negotiability of commercial paper and does not apply to non-negotiable instruments. As said by the court in *Clingman* v. *Hill et al.,* 113 Kan. 632, 215 Pac. 1013:

"The discharge of a pre-existing debt is a sufficient consideration to support a claim by the indorsee of a negotiable instrument that he is a holder in due course, but that is a rule peculiar to the transfer of commercial paper, which is designed to promote negotiability. Upon general principles of equity a trust

fund can ordinarily be followed into the hands of one who takes it in payment of an existing debt, although without notice of its character, for the discharge of the debt by such means is ineffectual, and the rights of the creditor can be fully protected, so that he shall suffer no loss, while the beneficiary of the trust can be restored to his own. *Schulein* v. *Hainer,* 48 Kan. 249, 29 Pac. 171; 39 Cyc. 567; Pomeroy's Equity Jurisprudence, § 1048; note, 35 L. R. A. (N. S.) 1174.''.

In Pomeroy's Equity Jurisprudence, volume 2, paragraph 749, the rule is stated thus:

''A conveyance of real or personal property, as security for an antecedent debt does not, upon principle, render the transferee a *bona fide* purchaser, since the creditor parts with no value, surrenders no right, and places himself in no worse legal position than before. The rule has been settled, therefore, in very many of the states, that such a transfer is not made upon a valuable consideration, within the meaning of the doctrine of *bona fide* purchase.''

See, also, 39 Cyc. 567, and cases cited in the note.

The rule so generally applied by the courts of the country, and often upheld by this one, that the terms of a written instrument cannot be contradicted or varied by parol testimony, does not, in our view, apply to the facts of this case, but rather an exception thereto as well recognized as the rule itself, namely, that such evidence may be admitted to show the true consideration when it is apparent from the instrument itself that the consideration recited therein is not the real one. The assignment to Kingsbury recites one dollar ''and other valuable consideration,'' and the purpose of the parol evidence objected to was to show what this other valuable consideration was. And the testimony discloses that it was nothing more nor less than an express agreement by Kingsbury to disburse the rent when received by him in accordance

with the terms of the oral agreement. In *Lockwood* v. *Canfield,* 20 Cal. 126, the Supreme Court of that state, in discussing the question here involved, used the following language which we think correctly states the principle applicable here:

"The rule invoked is that which precludes the introduction of verbal testimony to contradict or vary the terms of a written instrument. If this rule were applicable, it would be decisive of the case; but the principle upon which the evidence was admitted rests upon an exception as well established as the rule itself. The inquiry related to the consideration upon which the assignment was made, and it was undoubtedly competent for the plaintiffs, notwithstanding the recitals upon the subject, to show what the consideration really was. The character of the transaction was a matter of legal conclusion from the facts elicited; and the effect of holding that the evidence was inadmissible, would be to enable the defendants to retain the benefits of the transaction relieved of its burdens. The principle involved is the same as that which permits the introduction of similar evidence to prove that a deed, absolute on its face, was intended as a mortgage; and the admissibility of such evidence is not an open question in this court."

The court found that the claim of Leo Goldman, who had paid what was due on the first mortgage and the taxes to protect his second mortgage, was entitled to be subrogated to that of the Bank of Arizona against the Farmers' & Merchants' Bank to the extent that such claim would be reduced by the proceeds of the lease. It therefore entered judgment that Goldman recover from the superintendent of banks and *ex-officio* receiver of the Farmers' & Merchants' Bank the sum of $7,335.39, the proceeds of the lease which, under the judgment, were to be applied by the Bank of Arizona as a credit on the indebtedness of the Farmers' & Merchants' Bank to it. Having

reached the conclusion that the Bank of Arizona is entitled to no portion of the proceeds of the lease, this part of the judgment falls also, and though by virtue of it Goldman, as appears from appellee's motion to dismiss the appeal, received as a dividend from the receiver of the Farmers' & Merchants' Bank $220.06, this did not, under the circumstances, prevent him or the other appellants from prosecuting their appeal.

The appellants being entitled to the proceeds of the lease, the judgment of the superior court is reversed and the cause remanded, with directions to that court to enter judgment that appellants have and recover of the defendant, the Bank of Arizona, $7,335.39, together with interest thereon at six per cent per annum from January 15, 1924, less $220.06, with interest thereon from the date this amount was paid to Goldman by the receiver.

ROSS and LOCKWOOD, J. J., concur.